ELIJAH H. SAFFOLD *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Deadly weapon. Ordinary pocketknife. Instruction.*

   An instruction that an ordinary pocketknife is not *per se* a deadly weapon, as a matter of law, should not be given. The jury should say, as a matter of fact, whether a weapon is or is not deadly.

2. SAME. *Cowardice. Needless fear. Instruction.*

   An instruction to the jury, that they should put themselves in place of defendant, and judge of his acts by the facts and circumstances by which he was surrounded, but should not give him the benefit of personal timidity or needless fear, is correct in the abstract; but such an instruction ought to conclude with words authorizing its application only if the personal timidity and needless fears are shown by the evidence beyond reasonable doubt.

3. Same.   *Self-defense; right of, lost.*

An instruction to the effect that the right of self-defense is lost by one who originates a difficulty, and enters into it armed, intending to use the weapon if necessary to overcome his adversary, should not be given where there is a want of evidence that the accused began the difficulty.

4. Criminal Procedure.   *Change of venue.*

Facts examined and conclusion reached that defendant's application for a change of venue should have been granted.

From the circuit court of Montgomery county.

Hon. W. F. Stevens, Judge.

Saffold, the appellant, was indicted for the murder of Ingram. He made an application for a change of venue, which was denied.   One of the jurors, who, on his *voir dire*, denied that he was related to the deceased, was shown to be related to him in the fourth or fifth degree; another juror's wife was related to the deceased.   Ingram was postmaster; Saffold, expecting a letter, called for his mail, was informed by Ingram there was nothing for him; the next day he called and was handed a letter by some one other than Ingram, who was in charge of the office.   Saffold called attention to the failure of the postmaster to stamp on the letter the date of receipt; a dispute arose, and resulted in Ingram approaching and striking at and striking Saffold with his pocketknife; Saffold was knocked down, and in the struggle some one called out, "Stop, Ingram, for God's sake, stop," and Saffold fired his pistol and killed Ingram.

Third instruction for state: "While the jury should put themselves in the place of defendant and judge of his act by the facts and circumstances by which he was surrounded, they should not, however, give him the benefit of personal timidity or needless fear."

An instruction was given for the state that "an ordinary pocketknife is not a deadly weapon *per se.*"

Fifth instruction for state: "The right to use a deadly weapon in self-defense is denied to an accused person who was

the originator of the difficulty, entered it armed and brought it on intending to use his weapon to overcome his adversary.''

The defendant was convicted of manslaughter, and appeals.

*S. M. & W. C. Meek*, for appellant.

The third charge given for the state presupposes that the defendant was actuated by '' personal timidity and needless fears,'' and that, in obedience to these impulses, he fired the fatal shot that took the life of the deceased.   It was calculated to impress upon the jury that, in the opinion of the court, the act of the defendant, in using his pistol in resistance to the almost fatal blows inflicted upon him by the deceased, was not justifiable, but was an act of '' personal timidity and needless fear.''   An eminent law writer has said that '' any charge calculated to mystify or mislead the mind of the jury, rather than to enlighten it, should always be rejected.   The evil consequences to the accused can rarely be remedied.''   The judge is required to hold the scales of justice equally balanced between the state and the accused, and by no word or act or intimation should he, in the remotest degree, influence the minds of the jury as to the evidence before them.   While we do not intimate that the learned judge who presided in this case would intentionally have done any act of injustice to the accused, yet we cannot but believe that any candid or unbiased mind, upon calm reflection, will not doubt but that this charge was calculated to have that effect.

The fifth charge given for the state is equally objectionable. It necessarily impressed upon the mind of the jury, as the opinion of the court, that the defendant was the '' originator of the difficulty,'' and brought it on, etc., when the evidence conclusively shows that the deceased brought on the difficulty—struck the defendant a violent blow, when he was not looking, with a weapon calculated to inflict and did inflict upon him great bodily harm.   This charge, we respectfully submit, in view of the facts as developed by the evidence, should have been refused.

The seventh charge is axiomatic, and has no application to this case. Here the evidence shows that the pocketknife used by the deceased was capable of inflicting and did inflict great bodily harm. A deadly weapon is defined to be " any weapon the use of which is capable of inflicting great bodily harm or of taking life." The charge was calculated to mislead the jury, for the evidence shows that it was a large pocketknife, and the result of the blow shows that it did inflict great bodily harm upon the defendant, knocking him down, and while the blood was flowing from his face and temple, where the blow was landed, the attack was fierce and continuous, giving the defendant no time for reflection—no time to do anything save to shoot in the defense of his person and life. Hence, in view of the facts in this case, as developed by the evidence, we submit that this charge should have been refused.

The motion for a change of venue was made after due consideration of counsel, and, in view of all the facts and circumstances connected with the case, they were perfectly astonished that any impartial judge would have hesitated for a moment to grant it. That the presiding judge did so, was as much a surprise to the local counsel as it was to those less familiar with the rulings of this court. Not only were the express terms of the statute complied with, by presenting two of the most responsible and honorable citizens of the county, but twenty-three others, men of character and standing, all swore that, from their information and belief, the defendant could not get a fair and impartial trial in the county of Montgomery. This should have satisfied any court or judge, but in this case it did not.

*T. U. Sisson*, on same side.

The second instruction, while apparently harmless, is certainly a dangerous one in the hands of a strong prosecutor, who has the closing argument. It is most subtle, and deprives the defendant of the right to act upon appearances, however

sincerely he may believe them to have existed, if, in fact, they did not exist.    We recognize the well-defined rule to be that a defendant cannot, without reason, say that he was in danger of loss of life or great bodily harm.    There must exist some environment, circumstances or acts on the part of his adversary calculated to cause a reasonably prudent man to believe that he was in danger of great bodily harm or death.    Does the instruction convey this idea?    What does it mean?    The prosecution put in the word ''mere'' and plants itself upon this adjective as saving the instruction.    But it does not do so.

The court unquestionably erred in refusing to grant the plaintiff in error a change of venue.    If there ever was a case where the court should have granted the change, this defendant certainly established his rights to have a change of venue to some convenient county.    Unquestionably our statute contemplates that such a state of affairs may exist where a defendant in the circuit court is entitled to a change of venue, else the statute is vain.    Under what circumstances and how are these things to be determined which entitle a party to a change of venue?    Of course these matters are first passed upon by the circuit court, and the rule is that a change of venue is a matter largely within the discretion of the trial judge.    The defendant cannot complain unless this discretion has been abused, but of course the existence of the statute presupposes that there are causes where the defendants are entitled to a change of venue.    If there exists in all the realms of possibility a case, or if the wildest imagination can conceive of a case, where the facts will justify a change of venue, this is a case where it should be granted.    If the discretion has not been abused in this case, then no defendant need apply for a change of venue.    More than twenty - five reputable citizens swore that they did not believe that the defendant could possibly have a fair and impartial trial in Montgomery county. The evidence shows that Saffold was a stranger and that the deceased was connected, either by blood or marriage, to nearly all the county.    The record also shows that the jail was guarded

for a number of days and nights to prevent mob violence being done the prisoner.

*Wiley N. Nash*, attorney-general, for appellee.

As to the application for a change of venue: A circuit judge should rarely be reversed on this point. The testimony is all before the judge, he is presumed to know the character of the witnesses, he observes their manner, mode of testifying, etc. The language of the statute confers power on the court to grant the application, but it is not imperative, and the exercise of the power must necessarily be a matter within the sound discretion of the court. *Weeks* v. *State*, 31 Miss., 501; *Bishop* v. *State*, 62 Miss., 294; *Cavanah* v. *State*, 56 Miss., 300; *Stewart* v. *State*, 50 Miss., 587.

Ample testimony is found in the record to sustain the action of the court in overruling the application for change of venue.

Argued orally by *T. U. Sisson*, for appellant.

WHITFIELD, J., delivered the opinion of the court.

Reluctant as we always are to interfere with the exercise of discretion by the lower court, we have been compelled in this case, after the most careful consideration, to hold that the application for a change of venue should have been granted. Twenty-five witnesses, beside the defendant, testified positively that, by reason of " prejudgment of this case, or grudge or ill will towards the defendant," he could not obtain a fair and impartial trial in the county. Some twenty witnesses were examined by the state; a number of them had formed opinions as to the guilt of the defendant which it would require evidence to remove. Most of the expressions heard by these witnesses were decidedly adverse to the defendant. Defendant was a stranger in the county. Deceased's family connections were numerous, prominent and influential, and scattered over the county, especially the eastern part of the county, where was

the largest white element.    One of the jurors was, by affinity, related to the deceased in the fourth or fifth degree, and yet seems not to have known it.    So intense was the feeling roused against the defendant that mob violence threatened the jail, which had to be guarded.    We will not enlarge further.    Under this showing the venue should have been changed.    *Jamison* v. *People*, 145 Ill., 357.    See cases cited in notes to 3 Am. & Eng. Enc. L. (1st edition), 97; *Johnson* v. *Com.*, 82 Ky., 116.

The third instruction for the state is correct enough as an abstract proposition of law, but, as applied to the concrete case made by the testimony, should have added at the close, "if such personal timidity or needless fears are shown by the evidence beyond a reasonable doubt."    The instruction that an ordinary pocketknife is not *per se* a deadly weapon, as a matter of law, is one we are not prepared to approve.    What is an ordinary pocketknife?    The knife in this case was a four-bladed knife, about three inches long closed, with a buck horn handle.    Dr. Ward testified there were three parallel cuts on Saffold's face, apparently made "with a dull edge."    It is proper to have the jury to say, as a matter of fact, whether a weapon is a deadly weapon, and the court properly charged the jury for the defendant to this effect.    Indeed, the series of charges given for the defendant in this case were abundantly liberal to the defendant, and were drawn with consummate skill, and, whilst pointing out these errors in the two charges named, we would not for these errors reverse the judgment. But the fifth charge for the state, whilst announcing a correct abstract proposition of law, is fatally erroneous as applied to the case made by the proof.    There is an entire failure to show, in a proper sense, that Saffold began the difficulty.    We forbear to comment on the testimony, except as necessary in passing upon these charges.

*Judgment reversed, verdict set aside, and cause remanded for a new trial.*