477 So.2d 935 (1985)
Elton DUCKWORTH
v.
STATE of Mississippi.
No. 54868.
Supreme Court of Mississippi.
August 7, 1985.
Bobby Joe Randall, Gulfport, for appellant.
Bill Allain, Atty. Gen. by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, DAN M. LEE and ROBERTSON, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of the First Judicial District of Harrison County wherein the appellant, Elton Duckworth, was found guilty of armed robbery. *936 The jury fixed Duckworth's sentence at life imprisonment.
Shortly after 11:00 a.m., on January 26, 1978, Elton Duckworth and Willie George Carter entered Rouse's Grocery, located near Saucier, Mississippi. Carter bought some ice cream, after which Duckworth approached the counter, pulled a gun on the clerk and ordered her to open the cash register. The clerk, Georgia Ann Henley, was told to lie on the floor, whereupon Willie George Carter tied her hands behind her back with a piece of wire. Duckworth and Carter then left the store, taking with them approximately $126 and some food stamps still in the change drawer of the cash register. They reentered the car in which they had arrived and drove away. That vehicle was driven by Troy Carter, the brother of Willie George Carter. Shortly thereafter, the three were apprehended by officers of the Harrison County Sheriff's Department.
At trial, Georgia Ann Henley stated that on January 26, 1978, at about 11:15, she was held up by three black men, one who stayed with the vehicle while the other two entered the store. She testified that Willie George Carter bought an ice cream while Elton Duckworth looked around the store awhile. Shortly thereafter, Duckworth pulled a gun on her and told her to open the cash register. Henley identified Duckworth in the courtroom, identified the change drawer from the cash register, and testified as to the contents of the change drawer on the day of the robbery. Henley identified the gun used in the robbery as being black with a white handle and described it as looking real to her. Henley went on to testify that Willie George Carter tied her hands with a piece of wire and made her lie down on the floor behind the counter where she remained until they left the store.
William F. Collins testified that, on January 26, 1978, he was employed as a County Patrolman with Harrison County. On that day, he and his partner got a call alerting them to an armed robbery that occurred at Rouse's Grocery. They were advised to be on the lookout for an old model green car containing three black males, one of whom was possibly wearing a tan or reddish leather coat. Shortly thereafter, Collins and his partner stopped an old model green car with three black males in it, two in the front seat and one in the rear. The driver wore a leather coat which fit the description the officers had been given. Collins identified the occupants of the vehicle as being the three defendants, Elton Duckworth, Troy Carter and Willie Carter. Collins described finding the cash register change tray lying in the highway, 150 to 200 yards south of Rouse's Grocery. He went on to identify money and food stamps found in the tray and in the automobile. No weapon was found in the vehicle, according to Collins's testimony, although a gun was subsequently located one-half to three-quarters of a mile north of where the car was stopped.
Major Jerry Cooper, Chief of Patrol with the Harrison County Sheriff's Department, testified that he assisted in the investigation and was present when the gun was recovered, though not when the vehicle was stopped. He testified that the weapon was a .22 caliber type pistol, with a plugged barrel, and was actually a blank pistol. He also stated that he did not know whether it was possible that the gun could harm someone by being fired, although he acknowledged that it could have been used as a club and that he would not want it fired at him from close range.
At this point the state rested its case whereupon counsel for Elton Duckworth moved the court for severance prior to the testimony of co-defendant, Troy Carter. This motion was overruled.
Troy Lee Carter took the stand and stated that, on January 26, 1978, he had driven his green, 1966 Oldsmobile to his aunt's house, located across the highway from Rouse's Grocery. He stated that he had dropped off his brother, Willie Carter, and Elton Duckworth at Rouse's Grocery while he waited in the car. Carter further testified that he had never seen the cash register change tray until after he was in *937 police custody and that he had never seen the pistol before.
When shown a photograph of the front interior of his car, Carter acknowledged that it fairly and accurately depicted the scene and the condition of his car when the officer stopped it, with the exception of the placement of some tapes on and under the seat. Carter subsequently identified another photograph as showing Rouse's Grocery the way it appeared on January 26, 1978. Both photos were admitted into evidence as was an additional photograph of a brown paper bag which Carter testified looked like the same bag that was visible in the photograph of the front interior of his car.
After a lunch recess, on redirect, Troy Carter changed his testimony, stating that the photograph of the interior of his car did not show his car the way it was when he got out. Specifically, Carter denied the presence of the bag of money which was shown in two of the photographs.
On recross, Troy Carter admitted that an attorney, alleged to have represented Willie George Carter, had approached him during the noon hour, that they had discussed the photographs showing the bag with money in it and that, after talking with that attorney, he had changed his testimony. He stated that he had not understood that his original testimony regarding the appearance of the interior of the automobile had included the bag of money depicted within that vehicle. At that point counsel for Duckworth made a motion for a mistrial and renewed his request for severance.
At the conclusion of the defense's case, a motion was made for a directed verdict. That motion was overruled.
The assignments of error made by appellant may be distilled to two essential issues. Was Duckworth wrongfully denied severance? Was it error to refuse to submit Duckworth's instruction D-4 to the jury?
In raising the question of whether his repeated motions for severance should have been granted, counsel for Elton Duckworth quoted Price v. State, 336 So.2d 1311, 1312 (Miss. 1976):
In several cases since the statute was changed to its present form, the court has used language indicating that severance is a matter of right if seasonable application is made. Thompson v. State, 231 Miss. 624, 97 So.2d 227 (1957); Dueitt v. State, 225 Miss. 254, 83 So.2d 91 (1955); Bolin et al v. State, 209 Miss. 866, 48 So.2d 581 (1950); Malone v. State, 77 Miss. 812, 26 So. 968 (1900).
Neglected is the final sentence of that same paragraph: "We hold that the word `may' in § 99-15-47 should be given its ordinary meaning, and whether a severance should be granted is addressed to the sound discretion of the trial judge." Price, 336 So.2d at 1312. This holding is augmented by the subsequent cases of Blanks v. State, 451 So.2d 775 (Miss. 1984) and Fairley v. State, 349 So.2d 1050 (Miss. 1977) and by Rule 4.04 of the Mississippi Uniform Criminal Rules of Circuit Court Practice which states, in pertinent part, that "[t]he granting or refusing of severances of defendants in cases not involving the death penalty shall be in the discretion of the trial judge."
This leads, necessarily, to the question of whether the lower court's refusal to grant a motion for severance was an abuse of his discretion. In the instant case, the testimony of Troy Lee Carter did not tend to exculpate himself at the expense of Willie George Carter or Elton Duckworth, his co-defendants, i.e., there does not appear to be a conflict of interest among the co-defendants. Neither did the balance of the evidence introduced at trial go more to the guilt of one defendant than to the others. It is clear, therefore, that the lower court did not abuse its discretion by declining to grant severance. Blanks, 451 So.2d at 775. Absent a showing of prejudice, there are no grounds to hold that the trial court abused its discretion. Price, 336 So.2d at 1312.
We now turn to the question of whether Duckworth's instruction D-4 was *938 wrongfully refused. The refused instruction reads as follows:
The Court instructs the Jury that it is a question of fact for you to determine whether the gun, which is a Blank Starter Pistol, was a deadly weapon in the manner claimed to have been used in this case.
A deadly weapon may be defined as any object, article or means which, when used as a weapon is, under the existing circumstances reasonably capable of or likely to produce death or serious bodily harm to a human being upon whom the object, article, or means is used as a weapon.
The instruction which was given by the court was identical to the one above save for the exclusion of the words "which is a Blank Starter Pistol."
This Court has long held that the determination of whether an instrument is a deadly weapon is a question of fact to be determined by the jury. Jackson v. State, 404 So.2d 543 (Miss. 1981); Shanklin v. State, 290 So.2d 625 (Miss. 1974); Johnson v. State, 230 So.2d 810 (Miss. 1970); Cobb v. State, 233 Miss. 54, 101 So.2d 110 (1958); Golden v. State, 223 Miss. 649, 78 So.2d 788 (1955); Gray v. State, 220 Miss. 220, 70 So.2d 524 (1954); Smith v. State, 49 So.2d 244 (Miss. 1950); Bolin v. State, 209 Miss. 866, 48 So.2d 581 (1950); Lott v. State, 130 Miss. 119, 93 So. 481 (1922); Saffold v. State, 76 Miss. 258, 24 So. 314 (1898). The instructions, as submitted to the jury, properly include and relate that point of law.
It is also well established that instructions to the jury should not single out or contain comments on specific evidence Voyles v. State, 362 So.2d 1236 (Miss. 1978); Williams v. State, 354 So.2d 266 (Miss. 1978); Scott County Co-op v. Brown, 187 So.2d 321 (Miss. 1966); White v. Miss. Power Co., 252 Miss. 97, 171 So.2d 312 (1965). An examination of the entire record, including the instructions to the jury, indicates that the jury was properly instructed regarding its responsibility to determine whether the gun used by Duckworth was, in fact, a deadly weapon. The instructions given contained an accurate statement of law; the granting of the refused instruction D-4 would have been a comment by the court on the evidence. The refusal was not error.
Having thoroughly examined the record, we are of the opinion that no reversible error was committed. Having so determined, we therefore affirm.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.