# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CT-00949-SCT

*HENRY PAYTON a/k/a HENRY C. PAYTON*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 05/17/96 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: DEWITT T. ALLRED, III |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 08/26/1999 |
| MOTION FOR REHEARING FILED: | 09/10/99; denied 2/1/2001 |
| MANDATE ISSUED: | 2/8/2001 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Henry Payton stands convicted of armed robbery, kidnapping, and arson in connection with a bank robbery in Walnut Grove, Leake County, Mississippi. He appealed raising seven issues, all found to be without merit by the Court of Appeals in a 5-4 decision. In his Petition for Writ of Certiorari, Payton asserts that the Court of Appeals erred on four of those issues in affirming the conviction. We find that the failure to sever the trials in this case constitutes reversible error. The prosecutor's use

of the improper "send a message" argument during closing arguments was also error in this case, requiring reversal and remand for a new trial, both on its own and compounded with the lack of severance. On remand, we also caution the trial court that it erred in sustaining the State's objection to Payton's testimony on the ground that it was self-serving.

## STATEMENT OF THE FACTS

¶2. On September 29, 1995, in Leake County, a commercial building was completely burned, the Bank of Walnut Grove was robbed, and the bank president, Ray Britt, was taken hostage. Investigation and testimony at trial revealed that four men were involved in this series of events--Cleon Graves, Cornelius Belmer, Dedrick Marshall, and the appellant, Henry Payton. According to his accomplices, Payton was the mastermind behind the crimes. They each testified that it was Payton's idea to burn the building in order to divert attention from the bank and then to have them rob the bank at gunpoint while Payton waited outside in the getaway car. Payton also allegedly suggested that, if something should go wrong in the bank, the men should take a hostage.

¶3. Graves, Belmer, and Marshall then proceeded to rob the bank. When they got the money and were ready to leave, they looked outside for Payton. They realized that Payton had abandoned them and remembered Payton's advice to take a hostage. They decided on Ray Britt, the bank president, so they took Britt and his car and fled the bank, with Britt driving at gunpoint. Heavily pursued by law enforcement officials, the men forced Britt to drive south to Interstate 20 and then west toward Jackson. According to Britt, the three men continually cursed Henry Payton during the high speed chase for leaving them at the bank. The vehicle went through a roadblock in Forest, and according to Officer Joe Nelson, there was a shot fired from the window of the car at Nelson's patrol vehicle. Unable to stop the men, Nelson radioed two semi-trucks on the interstate via C.B. and asked them for help in apprehending the men. The trucks slowed down and rode side-by-side to prevent the men from passing. When the men were unable to pass the trucks, they ordered Britt to exit the interstate at Morton. Britt then grabbed the gun that had been pointed at him throughout the chase and ran the car into a concrete traffic island. Finally, the car came to a stop, the police closed in, the three men were arrested, and Britt was freed. After learning of Payton's involvement in the crimes, law enforcement officials located and arrested him and charged him with armed robbery, kidnapping, and arson in the second degree. Payton was tried and found guilty as charged. The jury recommended a life sentence for both the armed robbery and kidnapping. Payton was so sentenced, and said life sentences were imposed consecutively in addition to five years for the arson charge. Aggrieved by his conviction and sentence, Payton appealed. The Court of Appeals affirmed the conviction, and we granted certiorari to review the Court of Appeals's judgment.

# STATEMENT OF THE LAW
## I.
## FAILURE TO SEVER TRIALS

¶4. In addressing the trial court's failure to grant Payton's motion to sever his trial from that of his co-defendant, Marshall, the Court of Appeals ruled that the lower court did not abuse its discretion, because the evidence at trial went to the guilt of both defendants equally, and Marshall's testimony did not appear to exculpate him at the expense of Payton. *Johnson v. State*, 512 So. 2d 1246, 1254 (Miss. 1987); *Hicks v. State*, 419 So. 2d 215, 216 (Miss. 1982).

¶5. In his dissent, Judge Southwick acknowledged that this is the proper standard, but asserted its improper application in this case by pointing out that Marshall's testimony implicated Payton as the mastermind of the crime, shifting most of the blame onto Payton, particularly for the church arson. Marshall also attempted to assert a defense of duress by Payton. As Judge Southwick pointed out in his dissent, although Marshall's testimony did not exonerate him, it was an attempt at mercy and considerably strengthened the State's case against Payton. This is by far a more accurate description of what transpired at trial than the summary in the Court of Appeals majority opinion.

¶6. The Court of Appeals dissenters also properly pointed out that the majority opinion conflicts with *Hawkins v. State*, 538 So. 2d 1204, 1207 (Miss. 1989), in which this Court stated:

> In *Duckworth v. State,* 477 So. 2d 935, 937 (Miss.1985), this Court stated that there are a number of criteria to be used to determine if the denial of a motion for severance is proper. These criteria are whether or not the testimony of one co-defendant tends to exculpate that defendant at the expense of the other defendant and whether the balance of the evidence introduced at trial tends to go more to the guilt of one defendant rather than the other. Absent a showing of prejudice, there are no grounds to hold that the trial court abused its discretion. *Id.* at 937.

*Id.*

¶7. Payton was prejudiced by Marshall's testimony and defense strategy in general. This strategy was an attempt by co-defendant Marshall through his testimony and that of his witness to mitigate his potential dual life sentences by shifting as much blame as

possible to Payton, whose defense was a general denial of the allegations. While it is true that Marshall did not attempt to fully exculpate himself, the blame-shifting is apparent. As the Court of Appeals dissent pointed out, Marshall's defense was successful to Payton's detriment as evidenced by the disparity in sentencing verdicts.

¶8. It appears that the prosecution, by vehemently opposing the severance, was attempting to ensure Payton got a life sentence as he suggested on direct appeal. This theory is supported by the closing argument of the prosecutor who asked the jury for leniency as to Marshall and to "send a message" to Payton and those like him. Denial of Payton's motion for severance in this case severely prejudiced his defense, requiring reversal and remand to the circuit court for a new trial.

## II.
## PROSECUTOR MISCONDUCT - "SEND A MESSAGE" ARGUMENT

¶9. During closing argument, District Attorney Ken Turner made the following statement:

> Send a message to these older, more mature, criminals, "We are not going to let you ruin young people's lives like you have ruined these three people's lives, and all these lives you endangered in the process."

¶10. The Court of Appeals found that this issue was waived, because the defense failed to make a timely objection. *Turner v. State*, 721 So. 2d 642, 646 (Miss. 1998). This is confirmed by a review of the record and not contested in the Petition for Writ of Certiorari. "However, if the argument is so 'inflammatory' that the trial judge should have objected on his own motion the point may be considered." *Gray v. State*, 487 So. 2d 1304, 1311 (Miss. 1986). In his Petition for Writ of Certiorari, Payton asserts that the cumulative effect of the prosecutor's statement and the trial court's other errors combined to deny him a fair trial.

¶11. We have repeatedly condemned the "send a message" argument and warned prosecutors accordingly. *See, e.g., Evans v. State*, 725 So. 2d 613, 675 (Miss. 1997); *Chase v. State*, 699 So. 2d 521, 537 (Miss. 1997); *Wilcher v. State*, 697 So. 2d 1123, 1139 (Miss. 1997); *Wilcher v. State*, 697 So. 2d 1087, 1112 (Miss. 1997); *Hunter v. State*, 684 So. 2d 625, 637 (Miss. 1996); *Williams v. State*, 522 So. 2d 201, 209 (Miss. 1988). Although we approved use of the "send a message" argument in *Carleton v. State*, 425 So. 2d 1036, 1039 (Miss. 1983), we impliedly rejected the *Carleton* position in *Williams* and *Hunter*. *Hunter*, 684 So. 2d at 637; *Williams*,

522 So. 2d at 209. To clear up any remaining confusion on this issue, we hereby overrule *Carleton* to the extent that it condoned use of the "send a message" argument.

¶12. We aptly explained the problem with the "send a message" argument in our opinion in *Williams*:

> The jurors are representatives of the community in one sense, but they are not to vote in a representative capacity. Each juror is to apply the law to the evidence and vote accordingly. The issue which each juror must resolve is not whether or not he or she wishes to "send a message" but whether or not he or she believes that the evidence showed the defendant to be guilty of the crime charged. The jury is an arm of the State but it is not an arm of the prosecution. The State includes both the prosecution and the accused. The function of the jury is to weigh the evidence and determine the facts. When the prosecution wishes to send a message they should employ Western Union. Mississippi jurors are not messenger boys.

*Williams*, 522 So. 2d at 209.

¶13. We have not previously held use of the "send a message" language standing alone to warrant reversal. However, in *Alexander v. State*, No. 97-KA-01377-COA, 1999 WL 87109 (Miss. Ct. App. Feb. 23, 1999), the Court of Appeals noted that our warnings against use of the "send a message" argument have gone unheeded, as prosecutors continue the practice. *Alexander*, 1999 WL 87109 at *5. The Court held, "Today, by order of this opinion, we condemn the use of the 'send a message' argument by prosecutors and state that in the future the 'send a message' remark used expressly or impliedly will alone constitute reversible error." *Id*. Judge Southwick, (joined by Chief Judge Bridges, Presiding Judge McMillin, and Judge Payne), wrote a concurring opinion, taking the position that there is no need to create a per se rule requiring automatic reversal in every case in which the "send a message" argument is used. *Id*. at *6. Instead, the dissenters promulgated use of appellate review "to determine whether error affected a trial in such a way as to bring its fairness into question." *Id*. Judge Southwick also pointed out that trial and appellate courts should take advantage of the tools currently available for deterring "conscious ignoring of trial rules"-contempt hearings and assessing costs of retrials. *Id*. at *6-7.

¶14. We agree with the position taken by Judge Southwick and decline to adopt the per se reversible error rule on this issue. However, we agree with the Court of Appeals majority in *Alexander* insofar as we find that use of the "send a message" argument may, depending upon the surrounding circumstances, constitute reversible error on its own. As Justice Banks stated in his separate opinion in *Wells v. State*, 698 So. 2d 497,

519 (Miss. 1997), "it is high time that the bench and bar take seriously our admonitions about such improprieties. Harmless error analysis should not be considered as a license to transgress the rules of fair argument that are repeatedly promulgated by this Court." *Wells*, 698 So. 2d at 519 (Banks, J., concurring in part and dissenting in part). In his dissenting opinion in *Wells*, Justice McRae also recommended sanctions for the district attorney's continued misconduct:

> . . .While no defendant is guaranteed a perfect trial, each defendant is guaranteed a fair trial. In addition, as the majority notes, the prosecutor's actions flew in the face of well-established court rules, as well as previous warnings from this Court.
>
> > If a prosecuting attorney, who is presumed to know better, persists in making erroneous and prejudicial remarks in his argument before the jury, then the trial court should deal harshly with him to the extent of sanctions, reprimands and contempt. This Court will not look for some reason to excuse such action of a prosecuting attorney, even though a new trial would be expensive to the people of the county. Such expenses, fault and blame should be placed at the door of the person who is responsible for it.
>
> *Livingston v. State*, 525 So. 2d 1300, 1308 (Miss. 1988) (footnote and citations omitted). Further,
>
> > [i]t is not beyond the authority of this Court to assess the entire costs of a new trial to the attorney whose conduct made the trial necessary in those cases where [a reversal for unprofessional conduct] occurs. Personal liability for this cost may well be imposed by this Court in the future and it will be done with an even hand, applied both to the private attorney and the attorney representing the State.
>
> *Stringer v. State*, 627 So. 2d 326, 330 (Miss. 1993). Accordingly, as a sanction, the costs of the appeal and preparation of the record should be assessed against the prosecuting attorney. . . .

*Wells*, 698 So. 2d at 520-21 (McRae, J., dissenting). In the future, where sufficient evidence exists to show that a prosecutor is persistently ignoring our admonitions against use of the "send a message" argument, we will not hesitate to sanction him with the costs of a new trial where necessary.

¶15. Standing alone, the district attorney's use of the "send a message" argument in this case would be reversible error because of the prejudice against Payton evidenced by his more severe sentence. Combined with the prejudice resulting from the trial court's failure to sever, the improper argument resulted in an unfair trial in this case. Fundamental fairness principles dictate that Payton's convictions and sentences resulting

from the apparent prejudice be reversed and this case remanded for a new trial.

## III.
## IMPROPER RE-DIRECT TESTIMONY BY CO-DEFENDANT'S WITNESS

¶16. At trial, Payton's co-defendant, Marshall, called Corey Young as a witness in order to substantiate his claim that he (Marshall) was acting under duress applied by Payton when he robbed the bank. Young testified on direct examination that he had been present when Payton discussed robbing the bank and that he (Young) wanted no part in the crime. On cross-examination, the prosecuting attorney suggested that Young had not been to Payton's shop very often, in an apparent challenge to his credibility. On redirect examination, Marshall's attorney asked Young if the bank robbery had been brought up more than once or twice. At that point, counsel for Payton objected, claiming that redirect is limited to matters brought out on cross-examination. Marshall's attorney responded that the matter was brought out on cross by the state.

¶17. Although the Court of Appeals incorrectly found that the matter was first brought out on cross by Payton's attorney, the Court properly applied the law, finding that Marshall was within the proper scope of redirect examination in rehabilitating his witness. *Beckwith v. State*, 707 So. 2d 547, 591 (Miss. 1997) ("Because these matters were all 'brought out on cross-examination,' we find the trial court did not abuse its discretion in allowing redirect examination on the matters."). Payton's argument that the only purpose of this testimony was to implicate him is without merit. However, this instance of the co-defendants' trial strategies conflicting further exemplifies the need for a severance in this case.

## IV.
## TRIAL COURT'S SUSTAINING OBJECTION TO A PORTION OF
## PAYTON'S TESTIMONY AS SELF-SERVING

¶18. Testimony at trial revealed that shortly after the bank robbery occurred in Walnut Grove, Payton appeared in the nearby town of Lena to inquire about a car for sale. According to witness Joe Langford, Payton gave him his name and telephone number while making inquiries as to the auto. At the end of his direct examination, Payton was invited by his attorney to refute any testimony he had heard which was untrue. In response, Payton attempted to argue to the jury that Langford's testimony that he

approached Langford about purchasing a car on the afternoon of the robbery proved his innocence, on the theory that he would not be so careless as to give someone his name and telephone number if he had just committed a bank robbery. The State objected on the ground that this testimony was self-serving, and Payton assigns error to the trial court's sustaining the objection.

¶19. The Court of Appeals, citing *Henry v. State*, 209 So. 2d 614, 617 (Miss. 1968), found that the trial court did not err in refusing to allow "the defense's attempt to bolster Payton's testimony." *Henry* involved the issue of admissibility of expert testimony to bolster a party's own unimpeached witness. That case does not apply to the situation here, where the question did not request a corroborative response, nor did the response bolster any previous witness's testimony. Also, as Payton asserts in his Petition for Writ of Certiorari, the State's objection was not proper, because the self-serving objection applies only to hearsay testimony. *Young v. State*, 425 So. 2d 1022, 1027-28 (Miss. 1983); *Swaggart v. Haney*, 363 So. 2d 251, 255-56 (Miss. 1978); *Stennis v. Stennis*, 218 So. 2d 716, 717-18 (Miss. 1969). Since the testimony did not involve hearsay, the testimony was not objectionable on the ground that it was self-serving, and the trial court erred in sustaining the State's objection. Although this issue might not require reversal on its own, it adds to the cumulative effect requiring reversal in this case.

## CONCLUSION

¶20. The trial court improperly denied Payton a severance from the trial of co-defendant Marshall. The trial judge further erred in allowing District Attorney Ken Turner to use the "send a message" argument during closing. These two errors, combined with the improper sustaining of the State's objection to Payton's testimony on the ground that it was self-serving, denied Payton a fair trial in this case. We therefore reverse the judgment of the Court of Appeals, reverse Payton's convictions and sentences, and remand this case to the Leake County Circuit Court for a new trial.

¶21. **REVERSED AND REMANDED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, MILLS AND COBB, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, J.**


**SMITH, JUSTICE, DISSENTING:**


¶22. On writ of certiorari, the majority reverses and remands for a new trial the

conviction of Henry Payton. The Court of Appeals affirmed Payton's conviction in a 5-4 decision. Largely adopting the reasoning of Judge Southwick's dissent, the majority holds that the Payton was entitled to severance from the trial of his alleged co-perpetrator Dedrick Marshall. Maj .Op. at 5. Because I agree with Judge Diaz's majority opinion, I must respectfully dissent.

¶23. There, in addressing the severance issue, Judge Diaz wrote as follows:

> The supreme court has held that where the evidence at trial went to the guilt of both defendants equally, and where the testimony of one defendant did not appear to exculpate himself at the expense of the other defendant, severance is not required. *Johnson v. State*, 512 So.2d 1246, 1254 (Miss. 1987). Such is the case here. The evidence at trial proved that both Payton and Marshall were equally guilty of the three crimes with which they were charged, and they were convicted accordingly.

Judge Diaz is correct, such really is the case here. Upon cross-examination, Marshall, the co-defendant, confessed his personal involvement to all of the crimes alleged as well as to the participation of Payton. In fact, Marshall went so far as to apologize to the citizens of Leake County. Thus, Marshall's testimony corroborates the testimony of the other co-indictees who had already pled guilty.

¶24. The majority attempts to align this case with our cases requiring severance. *See Hawkins v. State*, 538 So.2d 1204 (Miss. 1989). There, we stated as follows:

> In *Duckworth v. State*, 477 So.2d 935, 937 (Miss.1985), this Court stated that there are a number of criteria to be used to determine if the denial of a motion for severance is proper. These criteria are whether or not the testimony of one co-defendant tends to exculpate that defendant at the expense of the other defendant and whether the balance of the evidence introduced at trial tends to go more to the guilt of one defendant rather than the other. Absent a showing of prejudice, there are no grounds to hold that the trial court abused its discretion. *Id.* at 937.

538 So. 2d at 1207. Under this standard, the majority relies upon Marshall's confession where Payton is not only tabbed as a co-perpetrator, but also as the ringleader and mastermind. Thus, the majority writes that "[w]hile it is true that Marshall did not attempt to fully exculpate himself, the blame-shifting is apparent." Maj. Op. at 5.

¶25. Contrary to the majority's claim, Marshall did not exculpate himself in any way, shape, form or fashion. In fact, he confessed on the stand to the crimes alleged in true Perry Mason fashion. He denied that he acted under any duress from Payton and admitted that he had willingly joined the scheme in order to get some money.

Therefore, I cannot agree with the majority's conclusion that Marshall exculpated himself at the expense of Payton.

¶26. Furthermore, no undue prejudice befell Payton. The only conflict between the two testimonies was that Marshall admitted, consistent with the two who had already pled guilty, that they committed the crimes alleged and were led by Payton. In stark contrast, Payton claimed an alibi, denied all involvement, and insisted that the other three co-perpetrators were all lying against him. Thus, regardless of whether he was tried jointly or not, Payton's defense would have been the same and the state's testimony against him would be the same.

¶27. In *Tillman v. State*, this Court bemoaned the denial of a severance of two codefendants where there was a prejudicial comparison of conflicting defenses by the jury. 606 So.2d 1104, 1106-07 (Miss. 1992). There, we said that "[a] separate trial would ensure that Tillman was convicted solely on the basis of the State's evidence and not because he and a codefendant had inconsistent defenses." *Id.* at 1107. Here, it cannot be said that there is a danger that Payton was found guilty "because he and a codefendant had inconsistent defenses." Although Marshall's attorney argued duress by Payton, the trial court denied Marshall's request for a duress instruction to the jury, and ruled that such an instruction was not supported or warranted by the evidence. Thus, the State's evidence went equally to both defendants, and Marshall's confession on the stand corroborated the other two co-indictees while contradicting Payton.[(1)]

¶28. Finally, I would point out that the learned trial judge's evidentiary rulings consistently prevented undue prejudice to Payton. The trial court twice excluded from questioning Marshall's post-arrest statement implicating Payton and sustained Payton's objection to testimony concerning any prior bad acts. Therefore, I agree with the judgment of the Court of Appeals majority and would affirm the trial court's denial of the severance.

¶29. The majority also would reverse for prosecutorial misconduct because the District Attorney made a "send a message" argument. This Court has continually condemned the "send a message" argument as used by the prosecution in this state. *See* *Hunter v. State*, 684 So.2d 625, 637 (Miss. 1996); *Chase v. State*, 699 So.2d 521, 537 (Miss. 1997); *Williams v. State*, 522 So.2d 201, 209 (Miss. 1988).

¶30. I agree with the majority's refusal to adopt the per se reversible error on this issue. However, the majority now holds in this case that, "Standing alone, District Attorney Turner's use of the "send a message" argument in this case would be reversible error." Maj. Op. at 8. I disagree. If I were convinced that other error existed in this record, I too would vote to reverse this case. However, my view is that no additional error exists, and therefore, the use of this condemned argument standing alone is not

reversible error. This Court has never held that such error standing alone justified reversing a jury verdict. *See Wells v. State*, 698 So.2d 497, 513-14 (Miss. 1997); *Wilcher v. State*, 697 So.2d 1123, 1139 (Miss. 1997); *Wilcher v. State*, 697 So.2d 1087, 1112 (Miss. 1997); *Hunter*, 684 So.2d at 637; *Ballenger v. State*, 667 So.2d 1242, 1273 (Miss. 1995). Therefore, I would not join the majority in doing what this Court has continually refused to do in the past. The use of the "send a message" argument alone is not enough to justify a reversal for a new trial. The evidence against Payton was overwhelming and that is solely why the jury convicted him. The prosecutor's comment regarding "send a message" made no difference whatsoever here.

¶31. Accordingly, I respectfully dissent.

## WALLER, J., JOINS THIS OPINION.

1. By reversing and remanding for a new trial, the majority imposes a needless waste of our State's judicial resources. The State would present the same evidence including the testimonies of Marshall and the other two co-indictees against Payton.