# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-00918-SCT

*JAMES EARL BOYD*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/13/2009 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS, JR. |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY:  W. DANIEL HINCHCLIFF |
| | LESLIE S. LEE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  STEPHANIE BRELAND WOOD |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/23/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.

## PIERCE, JUSTICE, FOR THE COURT:

¶1.     This case comes before the Court on appeal from the Lowndes County Circuit Court. The jury convicted James Earl Boyd of aggravated assault pursuant to Mississippi Code Section 97-3-7, and the trial court sentenced Boyd to a term of twenty years.  Boyd filed this timely appeal, and argues that the trial court erred in failing to instruct the jury that, in an aggravated-assault prosecution it must find that the instrument used by the defendant was a deadly weapon.  Because it is well-established that failure to raise an issue at trial procedurally bars review on appeal, we affirm Boyd's conviction and sentence.

**FACTS**

¶2. On approximately March 29, 2008, Boyd had someone drop him off at Wanda Sherrod's mother's house. Sherrod, her mother, grandson, and nephew were all sitting on the front porch of the home. Boyd took a seat next to Sherrod's mother and exchanged pleasantries. Boyd then moved to a seat that was closer to Sherrod and her grandson. As Sherrod got up to get her grandson some juice, Boyd said "Hold up Wanda, I got something for you." He then produced a knife and cut Sherrod several times. Sherrod's screams alarmed a neighbor, who noticed Boyd stabbing Sherrod. The neighbor ran inside her home and notified her husband. Upon coming outside, the husband saw Boyd stabbing Sherrod. He yelled at Boyd to stop and then pushed Boyd, causing Boyd to drop the knife. The husband kicked the knife away from Boyd, after which Boyd got up and calmly walked away. The neighbors called 911.

¶3. Officer Scott Glascow spotted Boyd walking a few blocks from the scene of the crime. Officer Glascow noticed Boyd had blood on his pants and that he was bleeding from his hands. Boyd told the officer, "I was defending myself. They were getting my money." Boyd cooperated with all of the officer's instructions and subsequently was arrested.

¶4. Boyd was indicted on one count of aggravated assault for the stabbing of Wanda Sherrod. Prior to trial and in response to Boyd's motion, the trial court ordered Boyd to undergo a mental examination by the Mississippi State Hospital at Whitfield, Mississippi.[1]

---

[1] Under the facts presented in the record, Uniform Circuit and County Court Rule 9.06 was satisfied to the extent the rule requires a hearing, after a mental examination has been ordered, to determine if the defendant is competent to stand trial. Prior to the start of trial, the trial court held a hearing and addressed the results of Boyd's mental examination. Judge

The examination showed that, while he appeared to have a history of mental illness, Boyd was able to understand the nature of his alleged actions and the difference between right and wrong in relation to his alleged actions. The test further demonstrated that Boyd had a reasonable degree of rational understanding regarding the nature of legal proceedings against him. Additionally, the clinical psychologist noted that Boyd's score on the Miller-Forensic Assessment of Symptoms Test (M-FAST), designed to assess exaggeration of psychological problems, reflected exaggeration of psychotic symptoms and malingering.[2] The results of Boyd's mental examination were made part of the record in this appeal.

¶5.     At trial, Boyd interrupted his attorney and the voir dire proceedings by taking his pants off and throwing them at the trial judge. The trial court had the jurors removed. Boyd's attorney moved for a mistrial, which the trial court denied. Again, the trial court made an on-the-record statement regarding Boyd's actions and concluded that Boyd was intentionally acting out in order to convince the jury that he was mentally ill.[3] Upon their

---

Kitchens found Boyd competent and made an on-the-record determination regarding Boyd's mental state: "I find no indication that you're [Boyd] mentally ill to the extent that you didn't understand right from wrong in this report."

    [2] Boyd scored an 18 on the M-FAST. Scores of 6 or more are considered to reflect exaggeration and malingering.

    [3] After Boyd's disruptive conduct, the trial court again stated on the record:

    I think it is a well orchestrated plan by Mr. Boyd. I have been able to discuss with Mr. Boyd. He's given answers that were – that shows that he's properly oriented. They were responsive to the questions, and he's been able to phrase questions in a well [sic] in responsive to the Court that indicated to this Court that he understands what's going on.

3

return, the trial court addressed the jurors regarding Boyd's actions, and all jurors indicated that they could be fair despite Boyd's conduct.

¶6.     The State produced three witnesses at trial, other than the Sherrod, who had seen Boyd repeatedly stab Sherrod with a knife.   The knife Boyd allegedly had used to stab and cut Sherrod was admitted into evidence.  Detective Travis Robertson, the investigating officer, testified that the knife Boyd had used to stab and cut Sherrod was a "kitchen knife" and that it did not have a blade guard, which had resulted in cuts to Boyd's right hand. The evidence further showed that the knife had a serrated edge.

¶7.     Additionally, the State introduced testimony from Dr. Thomas Vincent, the treating general surgeon, who testified that he had repaired sixteen wounds located mostly on Sherrod's face, neck and arms.  Dr. Vincent's testimony revealed that several of Sherrod's wounds were substantial and measured more than four inches in length.  Dr. Vincent further stated that if the wounds on Sherrod's neck had been a few centimeters deeper, Boyd would have severed Sherrod's carotid artery.

¶8.     After a two-day trial, the jury returned a verdict of "guilty."  Upon receiving the pre-sentence investigation report, the trial court sentenced Boyd to a term of twenty years.  Boyd filed this timely appeal.

## DISCUSSION

¶9.     Boyd claims for the first time on appeal that the trial court erred in failing to instruct the jury that, in an aggravated-assault prosecution, it must find that the instrument used by the defendant was a deadly weapon.  At trial, Boyd did not object to the state's instruction

4

concerning the elements of aggravated assault.  The State argues that because Boyd failed to object at trial, the issue was not preserved for appeal.

¶10.     It is well-established that failure to raise an issue at trial procedurally bars review on appeal.[4]  "To preserve a jury instruction issue on appeal, the defendant must make a specific objection to the proposed instruction to allow the trial court to consider the issue."[5]  Boyd failed to object to the State's instruction regarding the elements of aggravated assault at trial, nor did he raise the issue in his motion for judgment notwithstanding the verdict.  Thus, Boyd is procedurally barred from raising this issue for the first time on appeal.

¶11.     Notwithstanding the procedural bar, this issue is without merit.  Generally, "[jury] instructions are to be read as a whole."[6]  "When analyzing jury instructions as a whole, 'defects in specific instructions will not mandate reversal when all of the instructions, taken as a whole fairly – although not perfectly – announce the applicable primary rules of law.'"[7]  "[I]f the instructions fairly announce the law of the case and create no injustice, no reversible error will be found."[8]

---

[4]*Walker v. State*, 913 So. 2d 198, 217 (Miss. 2005).

[5]*Harris v. State*, 861 So. 2d 1003, 1013 (Miss. 2003) (citing *Crawford v. State*, 787 So. 2d 1236, 1244-45 (Miss. 2001)); *see also* *Colburn v. State*, 431 So. 2d 1111, 1114 (Miss. 1983) ("Because appellant failed to object to this instruction at trial, such has not been properly preserved for appellate review.").

[6]*Utz v. Running and Rolling Trucking, Inc.*, 32 So. 3d 450, 474 (Miss. 2010) (citing *Bickham v. Grant*, 861 So. 2d 299, 301 (Miss. 2003)).

[7] *Id*. (quoting *Beverly Enter. v. Reed*, 961 So. 2d 40, 43 (Miss. 2007)).

[8]*Harris v. State*, 861 So. 2d 1003, 1014 (Miss. 2003) (citing *Montana v. State*, 822 So. 2d 954, 957 (Miss. 2002)).

¶12.   In the instant case, the State – without opposition from Boyd – offered instruction S-2, which provided the following:

> The Court instructs the Jury that if you find from the evidence in this case beyond a reasonable doubt that on or about March 29, 2008, James Earl Boyd, did unlawfully, willfully, feloniously, purposely, and knowingly cause bodily injury to Wanda Sherrod with a knife, without authority of law and not in necessary self-defense, then you shall find the defendant guilty as charged.
>
> If the State fails to prove any one or more of the above elements beyond a reasonable doubt, then you should find the defendant not guilty. [9]

The statute under which Boyd was convicted states, in pertinent part:

> (2) A person is guilty of aggravated assault if he . . . (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm . . . .

Miss. Code Ann. § 97-3-7 (Rev. 2006).

¶13.   As the statute reveals, the phrase "with a deadly weapon or other means likely to produce death or serious bodily harm" is an essential element of the statute. And although no rule or precedent requires that an instruction mirror the exact language of a criminal statute, we have held that "the jury must be correctly and fully instructed regarding each

---

[9]Additionally, the language in the indictment provided, in pertinent part:

[T]hat James Earl Boyd late of the County aforesaid, on or about the 29th day of March, 2008, in the County and State aforesaid, did unlawfully, willfully, and feloniously, purposely and knowingly cause bodily injury to Wanda Sherrod, a human being, with a deadly weapon, to wit: a knife, without authority of law and not in necessary self defense, in violation of MCA § 97-3-7; contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State of Mississippi.

6

element of the offense charged."[10]  The "purpose of jury instructions is to tell the jury what facts they have to find and who has the burden of proving or disproving those facts."[11]

¶14.    The jury instruction at issue, S-2, did not properly instruct the jury that, in order to convict Boyd of aggravated assault, it *must* find: (1) that the knife with which Boyd had injured Sherrod is a "deadly weapon," or (2) that Boyd had caused Sherrod's injuries by "other means" likely to produce death or serious bodily injury.[12]  But we find, as we have before, that no fair-minded and properly instructed jury could fail to find that Boyd's knife was a deadly weapon,[13] and that Boyd's cutting and stabbing Sherrod multiple times was likely to produce serious bodily injury.[14]  In light of the overwhelming evidence that the knife Boyd used to stab Sherrod was a deadly weapon, we may safely conclude that the same result

---

[10]***Hunter v. State***, 684 So. 2d 625, 636 (Miss. 1996) (citing ***Neal v. State***, 451 So. 2d 743, 757 (Miss. 1984)).

[11]  ***Neal v. State***, 15 So. 3d 388, 397 (Miss. 2009) (citing ***Harris v. State***, 861 So. 2d 1003, 1016 (Miss. 2003)).

[12]Miss. Code Ann. § 97-3-7(2)(b) (Rev. 2006).

[13] Again, the knife used by Boyd was admitted into evidence, along with a picture of the knife as it was found by Detective Robertson.  The appellate record contains the picture of the knife and shows that the knife had a serrated edge and no blade guard.  It is clear from the evidence that the knife Boyd used to injure Sherrod was a deadly weapon.

[14]*See* ***Hutchinson v. State***, 594 So. 2d 17, 19-20 (Miss. 1992) (Court determined that the knife used by Hutchinson was a deadly weapon, and stated "[W]e have held in assault cases whether the instrumentality of attack is a deadly weapon within the statute is a question for the jury, (citations omitted), but this rule is in part a function of the fact that there is no such thing as a directed verdict for the prosecution in a criminal case." ***Fairchild v. State***, 459 So. 2d 793, 800-01 (Miss. 1984)).

7

would have been reached had the State included the phrase "a deadly weapon" in the elements instruction.[15] Accordingly, this assignment of error is without merit.

## CONCLUSION

¶15. For the reasons stated, we affirm the trial court.

¶16. **CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J., AND CHANDLER, J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶17. The majority finds that jury instruction S-2 "did not properly instruct the jury . . . ." Maj. Op. at ¶ 14. Yet, in the same paragraph, the majority opines that "no fair-minded and *properly instructed* jury could fail to find that Boyd's knife was a deadly weapon . . . ." *Id.* (emphasis added). Because the trial court's instructions fell short of apprising the jury of all the essential elements of the crime of aggravated assault, thus failing to put before the jurors the question of whether the instrument wielded by the defendant was, in fact, a deadly weapon – a question entirely within the jury's province – I respectfully dissent.

¶18. In Mississippi, "[i]t is rudimentary that the jury must be instructed regarding the elements of the crime with which the defendant is charged." *Hunter v. State*, 684 So. 2d

---

[15]*See* **Lancaster v. State**, 200 So. 721, 722 (Miss. 1941) and **Kolberg v. State**, 829 So. 2d 29, 48 (Miss. 2002) (citing **Conley v. State**, 790 So. 2d 773, 793 (Miss. 1983)) (Where the Court noted that an "[E]rror is harmless if it is clear beyond a reasonable doubt that it did not contribute to the verdict.).

625, 635 (Miss. 1996). *See Henderson v. State,* 660 So. 2d 220, 222 (Miss. 1995); *Neal v.*

*State*, 451 So. 2d 743, 757 (Miss.1984), *cert. denied*, 469 U.S. 1098, 105 S. Ct. 607, 83 L.

Ed. 2d 716 (1984). Thus, it is "'fundamental error' to fail to instruct the jury of the essential

elements of a crime." *Reddix v. State*, 731 So. 2d 591, 592 (Miss. 1999). *See Screws v.*

*United States*, 325 U.S. 91, 107, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945).

¶19.     In *Reddix*, the defendant was convicted of aggravated assault for violation of

Mississippi Code Section 97-3-7(2)(b). *Reddix*, 731 So. 2d at 592. At trial, the State

offered, and the trial court granted, jury instruction S-1 as its elements instruction:

> The Court instructs the Jury that if you believe from the evidence in this case
> beyond a reasonable doubt that on or about August 23, 1994, in Jackson
> County, Mississippi, the defendant committed an aggravated assault in and
> upon the body of Kevin Bickham with a certain deadly weapon, to wit: a
> shotgun, without provocation, or without threat of great bodily harm to
> himself, then it will be your sworn duty to find the defendant guilty as charged.

> If the State has failed to meet its burden of proof beyond a reasonable doubt
> then you shall find the defendant not guilty.

¶20.     Notably, on appeal, the State acknowledged that there was merit to Reddix's

contention that the jury had not been adequately instructed respecting the elements of

aggravated assault. On that and other grounds (the trial court's failure to give an appropriate

self-defense instruction), this Court reversed and remanded. The *Reddix* Court observed that,

when the jury is not instructed as to the essential elements of aggravated assault, it has no

way to determine whether the State has met its burden of proof. *Reddix,* 731 So. 2d 593.

¶21.     Likewise, in this case, the State offered, and the trial court granted, an inadequate

elements instruction. That instruction, S-2, is as follows:

9

> The Court instructs the Jury that if you find from the evidence in this case beyond a reasonable doubt that on or about March 29, 2008, James Earl Boyd, did unlawfully, willfully, feloniously, purposely, and knowingly cause bodily injury to Wanda Sherrod with a knife, without authority of law and not in necessary self-defense, then you shall find the defendant guilty as charged.
>
> If the State fails to prove any one or more of the above elements beyond a reasonable doubt, then you should find the defendant not guilty.

Conspicuous by its omission from the jury instruction is a characterization of the knife as a deadly weapon, despite the fact that this element of the crime was properly pled in the indictment. And, as in *Reddix*, the lower court gave the jury no other instruction that set out all the elements of aggravated assault.

¶22. The majority correctly states "that failure to raise an issue at trial procedurally bars review on appeal . . . ." Maj. Op. at ¶ 1. However, this Court has held that "errors affecting fundamental rights are exceptions to the rule that questions not raised in the trial court cannot be raised for the first time on appeal." *Smith v. State*, 477 So. 2d 191, 195 (Miss. 1985). Additionally, we have held that "[i]nstructing the jury on every element of the charged crime is so basic to our system of justice that it should be enforced by reversal in every case where inadequate instructions are given, regardless of a failure to object . . . at trial." *Shaffer v. State*, 740 So. 2d 273, 282 (Miss. 1998). In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the Supreme Court held that a criminal defendant is indisputably entitled to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Apprendi*, 530 U.S. at 477 (citing *United States v. Gaudin*, 515 U.S. 506, 510, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995).

10

Where a jury is not instructed on all the essential elements of the crime charged, the defendant is denied his fundamental right to due process. *Shaffer*, 740 So. 2d at 282.

¶23. Mississippi's statutory law on the felony of aggravated assault is found in Section 97-3-7 (2) of the Mississippi Code of 1972. That statute proscribes various kinds of conduct which, if correctly charged and adequately proven, can result in one's being convicted of aggravated assault. Apropos to this case is Subsection (b) of Section 97-3-7 (2), which makes it a serious felony for one to attempt to cause, or purposely or knowingly to cause, bodily injury to another person with a deadly weapon or other means likely to produce death or serious bodily harm. Miss. Code Ann. § 97-3-7(2)(b) (Rev. 2006).

¶24. The indictment in the present case contains all of the elements of the crime of aggravated assault, alleging that the accused ". . . did unlawfully, willfully, and feloniously, purposely and knowingly cause bodily injury to Wanda Sherrod, a human being, *with a deadly weapon,* to wit, a knife. . . ." The majority rightly notes that ". . . the phrase, 'with a deadly weapon or means likely to produce death or serious bodily harm' is an essential element of the statute," meaning, undoubtedly, an essential element of the *offense*.[16] (Emphasis added.)

¶25. Notwithstanding the evidence that Wanda Sherrod suffered multiple bodily injuries, because the indictment was drawn pursuant to the portion of the aggravated assault statute

---

[16]The Reddix indictment does not, and should not, include the second option provided by this portion of the statute, "or other means likely to produce death or serious bodily harm." Rather, this indictment alleges that the offending instrument was a deadly weapon, and briefly elaborates that it was a knife. This is a sufficient description of the injuring instrument in this case, and is an essential element of the crime as charged.

that proscribes the infliction of injury on another person *with a deadly weapon,* it was indispensable that the jury pass on this material element of the offense, as charged. A jury cannot be said to have decided something that it was not instructed to decide. If a defendant is not found guilty upon proper instructions that have put before the jury *all* of the material elements of the offense charged, then we cannot say that he or she has been convicted, even in the face of a guilty verdict. It does not suffice for us to pronounce, as the majority undertakes to do, that "no fair minded and properly instructed jury could fail to find that Boyd's knife was a deadly weapon." Though this Court is constitutionally vested with considerable authority, we do not possess the power to fathom what a jury *could* have found *if* it had been properly instructed.

¶26.    This Court consistently has held that whether an instrument is a deadly weapon is a question of fact to be determined by the jury. ***Davis v. State***, 530 So. 2d 694, 702 (Miss. 1988); ***Duckworth v. State***, 477 So. 2d 935, 938 (Miss. 1985); ***Jackson v. State***, 404 So. 2d 543, 544 (Miss. 1981); ***Shanklin v. State***, 290 So. 2d 625, 627 (Miss. 1974); ***Johnson v. State***, 230 So. 2d 810, 811 (Miss. 1970); ***Cobb v. State***, 233 Miss. 54, 101 So. 2d 110, 112 (1958); ***Golden v. State***, 223 Miss. 649, 78 So. 2d 788, 791 (1955); ***Gray v. State***, 220 Miss. 220, 70 So. 2d 524, 525 (1954); ***Smith v. State***, 49 So. 2d 244, 245 (Miss. 1950); ***Lott v. State***, 130 Miss. 119, 93 So. 481, 481-482 (1922); ***Saffold v. State***, 76 Miss. 258, 24 So. 314, 315 (1898).

¶27.    Whether a thing is a deadly weapon is not a query that is susceptible of judicial interpretation in the State of Mississippi, unless we are willing and ready to overrule well over a century of jurisprudence to the effect that this is always an issue of fact for

12

determination by the trier of fact, in this case, the jury. Although the term *a knife* may have an ominous ring to it, and while we may, from our lofty perch on High Street, wisely opine that no one could doubt that the knife at issue in this case is a deadly weapon, such a determination is not within the province of jurists, but of jurors. The jurors who were empaneled to decide the present case were not given that opportunity, no matter how fervently we may believe that we know what they would have decided if only they had been asked. No matter how compelling we may believe the evidence to have been, no matter how graphic the photographs in the record before us may be, the issue of whether the knife allegedly wielded by Boyd should be classified as a deadly weapon was, and continues to be, a question of fact that should have been placed before the jury for the jury's resolution, not the trial judge's and not ours.

¶28.    For the foregoing reasons, I would reverse and remand for a new trial.

**GRAVES, P.J., AND CHANDLER, J., JOIN THIS OPINION.**