606 So.2d 1103 (1992)
Walter TILLMAN
v.
STATE of Mississippi.
Clyde STEVENSON
v.
STATE of Mississippi.
Nos. 89-KA-1276, 89-KA-1321.
Supreme Court of Mississippi.
August 19, 1992.
*1104 John Edward Stillions, III, Indianola, for appellant.
Michael C. Moore, Atty. Gen., W. Glenn Watts, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and McRAE, JJ.
HAWKINS, Presiding Justice, for the Court:
Walter Tillman and Clyde Stevenson appeal their convictions of burglary and conspiracy to commit burglary from the Circuit Court of Sunflower County. Tillman was sentenced to five years in prison for the burglary conviction and three years for the conspiracy conviction. Stevenson was sentenced as an habitual offender to seven years for the burglary conviction and five years for the conspiracy conviction. Because we find that the trial court erred in denying Tillman's request for a severance, we reverse and remand his convictions for a new trial. Stevenson's convictions, however, are affirmed.

FACTS
James McDonald, the owner of the Roundaway Grocery Store in rural Sunflower County, testified that when he opened the store the morning of January 10, 1989, he discovered that the store had been burglarized during the night. He testified that the window on the west side of the store had been broken and the back door was open. McDonald estimated that $2,000 to $3,000 worth of merchandise was taken by the burglars, including a television *1105 set, a .22 pistol, radios and all kinds of groceries.
Chester Campbell testified that on January 9, 1989 he and Stevenson discussed breaking into the Roundaway Grocery after visiting it while hunting in the area. Campbell told Stevenson that he had been in the store with his mother on several occasions and had seen money in the cash register. When they finished hunting, Campbell and Stevenson went to Walter Tillman's house, where Campbell and Stevenson were staying, and discussed burglarizing the store with Tillman. According to Campbell, Tillman asked him if he definitely knew that there were valuable items in the store and Campbell replied that he did. Campbell then asked Tillman if he wanted to go with them and Tillman answered affirmatively.
Campbell testified that he, Stevenson and Tillman rode in Tillman's truck to the Roundaway Grocery later that night. Tillman drove the truck past the store and past a house located near the store in order to make sure no one was nearby. Tillman then backed the truck up to the store. While Tillman stood guard with a .30/.30 rifle and a 12 gauge shotgun, Stevenson broke a window out and entered the store through the window. Stevenson then let Campbell in through the back door. Campbell and Stevenson took several items from the store and loaded them in the truck, including a television set, radios, a .22 pistol and bags of groceries. In all, Campbell testified that they took approximately 45-50 bags of groceries from the store. After Tillman filled his truck with gas from the store's gas pump, they returned to Tillman's house where they unloaded the groceries. On cross-examination, Tillman's counsel successfully brought out the fact that Campbell had also been indicted for burglarizing Martin's Grocery Store in Boyer, Mississippi, on January 10, 1989. Campbell was not allowed to testify that Stevenson was also indicted for the Martin's Grocery Store burglary.
Tillman testified that he and his wife Josephine were separated. He testified that one night in early January, 1989, he was staying at his wife's house when Campbell and Stevenson came by and asked to borrow his truck. Tillman lent them his truck and Campbell and Stevenson kept it all night. Tillman testified that he stayed at his wife's house all night and when he got up the next morning, he found his truck sitting outside his wife's house with the keys in the ignition. When he returned to his house, Tillman saw the groceries, the t.v. and a radio. He asked Campbell where these items had come from and Campbell replied that he got them at a store in the country. According to Tillman, Campbell did not tell him that these items were stolen. Tillman admitted that he took a pack of fish to his wife and children, but testified that he told Campbell and Stevenson that they could not keep anything at his house. When he returned home from work that afternoon, everything had been taken elsewhere. Josephine Tillman and Tillman's son, Walter, Jr., testified that Tillman stayed at Josephine's house one night in early January, 1989, and that Stevenson borrowed Tillman's truck that night.
Stevenson testified that on January 9, 1989, he went to Stella Sutton's (the mother of Stevenson's friend Roger Simpson) house in Indianola at about 5:00 p.m. and stayed until approximately 8:00 p.m. when he went to visit a friend, Michael Scott, in Shaw, Mississippi. He returned to Sutton's house at about 9:30 p.m. and watched videos with her until 3:00 a.m. when he went home to Tillman's house. Stevenson testified that he was not with either Tillman or Campbell that night and did not borrow Tillman's truck. Aaron Nance testified that he and Stevenson were at Sutton's house watching videos until 3:00 a.m. on January 10, 1989. Nance and Stevenson then went to Nance's house where they spent the night.

LAW

I. SEVERANCE
Tillman and Stevenson contend that the trial court erred in overruling Tillman's motion for severance since their defenses were in conflict and Stevenson was *1106 indicted as an habitual offender. First, the State argues correctly that Stevenson may not raise this issue on appeal since he never moved for a severance at trial. Therefore, this Court must determine only whether Tillman was entitled to a severance.
In Hawkins v. State, 538 So.2d 1204, 1207 (Miss. 1989), the Court stated that the trial court has the discretion to grant a severance if it is necessary to promote a fair determination of the defendant's guilt or innocence. See also Miss. Unif.Crim.R.Cir.Ct.Prac. 4.04; Miss. Code Ann. § 99-15-47 (1972); Rooks v. State, 529 So.2d 546, 556 (Miss. 1988); Duckworth v. State, 477 So.2d 935, 937 (Miss. 1985); Cardwell v. State, 461 So.2d 754, 758 (Miss. 1984); Langston v. State, 373 So.2d 611, 612 (Miss. 1979). In Duckworth the Court stated that the criteria used to determine whether a denial for a motion for severance is proper are whether or not the testimony of one co-defendant tends to exculpate that defendant at the expense of the other defendant and whether the balance of the evidence introduced at trial tends to go more to the guilt of one defendant rather than the other. Duckworth, 477 So.2d at 937; Hawkins, 538 So.2d at 1207; Johnson v. State, 512 So.2d 1246, 1254 (Miss. 1987). Absent a showing of prejudice, there are no grounds to hold that the trial court abused its discretion. Duckworth, 477 So.2d at 937; Hawkins, 538 So.2d at 1207.
In Hawkins, the two defendants, Hawkins and Amos, were charged with robbery. Hawkins, 538 So.2d at 1205. At trial, a witness for the State identified Hawkins and Amos as the robbers. Hawkins did not testify in his own defense. Id. at 1207. However, Amos testified that he went to the convenience store where the robbery took place with Hawkins and a man named Leroy Murphy. They left in Amos's car and the car had a flat tire. Id. at 1206. Amos testified that while he changed the tire, Hawkins and Murphy went back to the store supposedly to get beer. The Court held that this testimony tended to exculpate Amos at the expense of Hawkins. Id. at 1207. Also, Amos's testimony disrupted the balance of evidence since it helped corroborate the State's witness's testimony that Hawkins was in the store. Therefore, the Court held that the trial court should have granted Hawkins's motion for a severance and reversed Hawkins's conviction. Id. However, the Court held that Amos was not prejudiced by the trial court's refusal to grant a severance since Hawkins did not testify. Amos was able to put on his defense regardless of the severance issue and his testimony exculpated himself at the expense of Hawkins. Amos therefore was not prejudiced by the lack of a severance. Id.; see also Rigby v. State, 485 So.2d 1060, 1061 (Miss. 1986). In Usry v. State, 378 So.2d 635, 637 (Miss. 1979), we noted that in cases involving multiple defendants, where one is charged as a habitual offender, a severance would ordinarily be preferred.
In this case, the evidence offered by the State implicated both Tillman and Stevenson equally in the commission of the crime. Campbell testified that both Tillman and Stevenson helped plan the burglary and actively participated in the burglary. However, the testimony of both of them tended to exculpate themselves at the expense of the other. Tillman testified that he was not with Stevenson or Campbell on the night of the burglary and Stevenson and Campbell borrowed his truck that night. He also testified that when he went to his house the next morning, he saw that Stevenson and Campbell had stored the stolen t.v., a radio and the groceries there and he made them take the items somewhere else. Stevenson, on the other hand, testified that he never borrowed Tillman's truck that night and spent most of the night watching videos at Stella Sutton's house.
We find that Tillman was prejudiced by the trial court's refusal to grant a severance. His defense and Stevenson's defense was obviously in conflict and the jury's immediate impression was that he and Stevenson were obviously lying. If a severance had been granted, the jury would have been able to consider Tillman's defense in light of the State's evidence without first comparing it to Stevenson's defense to make sure the defenses are consistent. *1107 A separate trial would ensure that Tillman was convicted solely on the basis of the State's evidence and not because he and a codefendant had inconsistent defenses. Therefore, Tillman's convictions must be reversed and remanded for a new trial.

II. IMPEACHMENT BY PRIOR CONVICTIONS
Prior to trial, Tillman's counsel asked the trial court for a ruling under Mississippi Rules of Evidence (MRE) 609 allowing him to impeach Stevenson and Campbell with evidence of their prior convictions. Both had two prior convictions of burglary. Stevenson was convicted of burglary in 1982 and 1984. Campbell was convicted of burglary twice in 1989. The trial court ruled that these convictions could not be used for impeachment, stating: "I can tell you now that in the absence of a statement from either of the other individuals, Stevenson or Campbell, that they have never committed a burglary or to that effect that you will not be permitted to impeach the testimony by showing previous convictions." (R. II, 22) Tillman and Stevenson argue on appeal that the trial court erred since it did not make an on-the-record determination that the prejudicial effect of admitting the prior convictions outweighed their probative value as required in Peterson v. State, 518 So.2d 632 (Miss. 1987).
MRE 609(a) provides:
(a) General Rule. For the purposes of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by the public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect on a party or (2) involved dishonesty or false statement, regardless of the punishment.
In Peterson v. State, 518 So.2d 632 (Miss. 1987), the defendant argued that the trial court erred in allowing the prosecution to impeach his testimony with a prior felony conviction without first making an on-the-record determination that its probative value outweighed its prejudicial effect. On appeal, the Court held that MRE 609(a)(1) requires the trial court to make an on-the-record determination that the probative value of the prior conviction outweighs its prejudicial effect before admitting any evidence of a prior conviction. Id. at 636. The Court listed several factors that should be considered by the trial court when weighing the probative value against the prejudicial effect:
(1) The impeachment value of the prior crime.
(2) The point in time of the conviction and the witness' subsequent history.
(3) The similarity between the past crime and the charged crime.
(4) The importance of the defendant's testimony.
(5) The centrality of the credibility issue.
Id. at 637.
The State argues that the trial court did not err in not making an on-the-record determination since Tillman and Stevenson did not make a threshold showing that the prior convictions had probative value. In Saucier v. State, 562 So.2d 1238 (Miss. 1990), the prosecution used the defendant's prior murder conviction to impeach his testimony. We held that as a threshold point, the prosecution is required to show that the conduct giving rise to the prior conviction was such that it bears upon the witness's propensity for truthfulness. Id. at 1245; see also McInnis v. State, 527 So.2d 84, 88 (Miss. 1988). Once the prosecution makes this prima facie showing, the trial court is required to consider and balance the factors set out in Peterson and make an on-the-record determination whether the probative value of the prior conviction outweighs its prejudicial effect. Until this prima facie showing is made, there is nothing for the trial court to balance or weigh against the prejudicial effect. McInnis, 527 So.2d at 88. This requirement of a prima facie showing of probative value should also apply when a defendant wishes to impeach a witness with a prior conviction.
*1108 Here, Tillman did not make a prima facie showing that the prior convictions of Campbell and Stevenson had probative value. Stevenson likewise made no initial showing that Campbell's prior convictions had probative value. All that was done by either defendant was Tillman's counsel asked the court for a ruling on whether the convictions were admissible. No one stated why these convictions would have any bearing on the truthfulness of Campbell's and Stevenson's testimony. Therefore, the trial court was not required to balance the probative value and prejudicial effect of these convictions on-the-record.
The remaining assignments of error are without merit.
Because the trial court erred in refusing to grant Tillman a severance, Tillman's convictions are reversed and remanded for a new trial. Stevenson's convictions and sentences are affirmed.
REVERSED AND REMANDED AS TO TILLMAN; AFFIRMED AS TO STEVENSON.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
McRAE, J., concurs in result only.
BANKS, J., concurs in result and concurs in Part I and dissents in Part II with separate written opinion joined by McRAE, J.
PITTMAN, J., not participating.
BANKS, Justice, concurring in part, dissenting in part:
I concur in the result reached by the majority. I do not, however, agree with Part II of the opinion expressing approval of the trial court's preclusion of impeachment evidence proffered by the defendant. I write separately to explain my disagreement.
The majority concludes that burglary offenses have no probative value as to truthfulness. I believe that such convictions have value. That value can be outweighed by prejudicial effect, as, for example, where the witness to be impeached is charged with the crime of burglary or a similar crime. The apparent genesis of the view that there are felonies which can be considered "non-probative" on the issue of truthfulness is McInnis v. State, 527 So.2d 84, 88-89 (Miss. 1988). What we call "probative value" there, however, is more properly viewed as "impeachment value," the first factor of what we have labeled the Peterson test. Peterson v. State, 518 So.2d 632 (Miss. 1987). If Miss.R.Evid. 609(a)(1) convictions are to be evaluated for "probative value," what are the criteria other than whether they involve dishonesty or false statement? If this is so, why was 609(a)(2) written?
In my view, all felonies committed within the time period specified by the rule have "probative value" for purposes of invoking the Peterson weighing factors. Indeed, the rule at common law was that one who had been convicted of a felony was incompetent as a witness. McCormick on Evidence, Third Edition, § 43, p. 93. Modern rules abandon the doctrine of incompetence but retain the use of felonies as grounds for impeachment. Id. 93-95. Some felonies  aggravated assault, murder and rape  have less impeachment value than others, perjury and fraud, for example. The Peterson mechanism takes that into account.
Burglary is a felony punishable by imprisonment for more than a year. For impeachment purposes, a conviction for burglary is admissible by virtue of the rule, provided that its probative value, a given under the rule and at common law, is not outweighed by its prejudicial effect. This test requires an assessment of the weight of its impeachment value, together with other factors which we have labeled the Peterson test.
Finally, we should note that the impeachment evidence was offered against two persons, one a party, who will not be a party on remand because we order a severance, and the other a witness, who is not a party. Our rule requires an assessment of prejudicial effect upon a party only, not a mere witness. Miss.R.Evid. 609(a)(1). Subject to the broader provisions of Rule 403 where the burden of showing that prejudice outweighs probative value is on the *1109 objector, no weighing is required where the impeachment evidence is offered against a mere witness.
McRAE, J., joins this opinion.