BANKS, Justice,
dissenting:
I am compelled to write separately for two reasons. First, the majority for the first time approves the use of victim impact testimony during the sentencing phase. In my view this is neither wise nor warranted. I also take issue with the majority’s treatment of the evidentiary issue of the sheriffs conviction. While I agree with much that is said by Justice Sullivan in dissent, I cannot agree fully with his ultimate conclusions.
I.
In the first place, the admissibility vel non of victim impact evidence is not raised by Wilcher. While he did object to this testimony when offered, he complains here that evidence of the impact of a death penalty on his family should also have been admitted. It is unnecessary then that we reach the question of whether the victim impact evidence that was admitted here was actually admissible.
If we are to address this issue, I, like Justice Sullivan, agree with the view expressed by Justice Stevens in dissent in Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). That view is consistent with what we have recently held in Mack v. State, 650 So.2d 1289, 1324-25 (Miss. 1994) (prosecutor’s use of victim characteristic evidence that he played dominoes, lived alone, and was a kind and well-loved man had no relevance at all other than to inflame the jury’s passions and violated this Court’s holdings notwithstanding the lack of a federal constitutional prohibition). See also Wiley v. State, 484 So.2d 339, 348 (Miss.1986) (prosecutor cannot enter proof of the good character of the decedent as part of its main case before the character of the deceased has been attacked). The majority should at least acknowledge that this Court has not before today approved victim impact evidence as relevant in and of itself in our statutory death sentencing scheme.
In Hansen v. State, 592 So.2d 114, 146 (Miss.1991), the defendant complained of the fact that the jury was informed of the fact that the victim was a state trooper. That information was, of course, relevant to the capital offense charged, the murder of a police officer in the performance of his duties. It was not admitted as victim characteristic evidence at the sentencing phase but rather was an integral part of the proof necessary to establish the capital offense. Miss.Code Ann. § 97-3-19(2) (Supp.1990). While this Court, somewhat gratuitously, discussed the constitutional limitations on our statutory law and concluded that Payne obviated any remote constitutional concern with the statute, it in no way approved the use of victim characteristic or victim impact evidence as independently relevant to sentence. Hansen, 592 So.2d at 147.
Similarly, the majority’s statement that Jenkins v. State, 607 So.2d 1171 (Miss.1992), held that the characteristics of the victim are ipso facto relevant to the crime charged is simply wrong. What Jenkins held was that the particular characteristics of the victim put in evidence were relevant in that case to the defendant’s claim that he was having a relationship with the victim. 607 So.2d at 1183. Jenkins went no further than Hansen. That is, where evidence of a characteristic of the victim is independently relevant to some issue of guilt, it is admissible. Neither case dealt with the kind of victim impact testimony that we have here and neither case sug *1121 gested that victim characteristic evidence is independently admissible.
Until today, this Court has wisely limited evidence to be offered by the State in the sentencing phase to evidence regarding the nature of the criminal offense and that regarding the statutorily prescribed aggravating factors that might support a death sentence. It is well-settled law that the State is prohibited from offering any other evidence that might be broadly considered relevant to sentencing if it is not related to the proof of those statutory aggravators, the Enmund factors, or bona fide rebuttal to any mitigating evidence that has been adduced. See Mack v. State, 650 So.2d at 1324-25 (addressing victim character and impact evidence as irrelevant to any of the permitted aggravating circumstances); Balfour v. State, 598 So.2d 731, 747-48 (Miss.1992); Coleman v. State, 378 So.2d 640, 648 (Miss.1979).
Victim impact evidence does not tend to prove any aggravating circumstance that is presently allowed in our statute. While it has been held permissible by the United States Supreme Court in that the Eighth Amendment does not preclude its use, our statute nevertheless does not expressly permit its use and we do not allow the State in capital cases to put on evidence not prescribed by the statute. Justice O’Connor, writing for three of the six-justice majority in Payne, was careful to note that the court did not hold “that victim impact evidence must be admitted, or even that it should be admitted.” Payne, 501 U.S. at 831, 111 S.Ct. at 2612. She further suggested that in a particular case a line may be crossed rendering such evidence offensive to the Due Process Clause of the Fourteenth Amendment. Id.
I do not suggest that the line has been crossed on today’s record. The victim impact testimony here involved was not as extensive as that allowed in Payne. I do suggest, however, that we should proceed with care in expressing approval of this kind of extra-statutory aggravating evidence, for it is fraught with danger. Assuming that this Court has now decided that it will permit this evidence despite the fact that it does not relate to a statutorily prescribed aggravating factor, we should go further and limit victim impact evidence to whether the victim left dependents, parents or siblings and a “quick glimpse” into the victim’s life. Id. at 830, 111 S.Ct. at 2611 (O’Connor, J., concurring).
All of the preceding discussion notwithstanding, the precise issue that has presented to this Court is whether the trial court erred in excluding evidence offered by the defendant as to the impact that his execution would have on his family. Wilcher argued that such evidence was only fair in light of the fact that the State had been allowed to introduce evidence of the impact of the victims’ deaths. I concur with the analysis of this issue that is set forth by Justice Sullivan. I wish only to highlight the illogic in the majority analysis. In Turner v. State, 573 So.2d 1335 (Miss.1990), we relied upon Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) (holding victim impact evidence irrelevant and inadmissibly unconstitutional), for our pronouncement that evidence of the impact on of a defendant’s execution on his family was irrelevant and inadmissible. Today, however, we rely upon Payne, which overruled Booth, to permit the State to introduce victim impact evidence while simultaneously utilizing Turner (and its outlawed rationale) to deny the comparable opportunity to the defendant to present his impact evidence.
Nevertheless, my review of the record compels me to concur in the result reached by the majority as to this issue. Wilcher was not denied the opportunity to elicit testimony concerning the impact of the imposition of the death penalty on his family. He was denied the opportunity to have family members express an opinion whether he should live or die. As the majority points out, ample impact testimony was given. What was precluded was the witnesses’ ultimate conclusion as to which sentence they preferred. I see no reason why an expression of opinion by a witness as to this ultimate conclusion to be reached by the jury should be permitted, whether it is the victims’ families’ wish for death or the defendant’s family’s wish for life. In this case, no family member of either the victim or Mr. Wilcher was permitted to make such a plea to the jury.
*1122 In sum, the majority says too much about this issue without proper briefing and argument, and I disagree strongly with the content of that excess.
II.
I also disagree strongly with the suggestion that it was not error to exclude the fact that Sheriff Warren, who testified to a statement given him by Wilcher, had been convicted of extortion. The conviction had been proffered to impeach his testimony that Wil-cher had confessed to the murders and his intent to rob the victims. Since Warren was deceased at the time of Wileher’s last trial, his testimony in the first trial was read to the jury in the second trial.
I agree with the majority to the point that it correctly notes the ability to impeach a witness whose testimony is offered in a form other • than as a live witness in the usual manner prescribed for impeachment. Thus prior convictions are available under Rule 609(a). The majority concludes, however, that because the conviction occurred some seven years after the testimony was offered, its probative value was somewhat attenuated. In the apparent exercise of the weighing process which the trial court wholly failed to engage, the majority concludes that this diminution of probative value is sufficient to justify the exercise of discretion to exclude the evidence.
As Justice Sullivan notes, the trial court did not weigh the probative value but rather precluded the evidence on the mistaken notion that the conviction must have occurred before the testimony was recorded in order for the impeachment material to be admitted. See, e.g. Turner v. State, 573 So.2d 1335, 1339 (Miss.1990) (noting that circuit court erred in refusing to allow defendant to impeach an inculpatory hearsay statement admitted at his trial with the declarant’s forgery conviction that occurred after the statement had been given); see also United States v. Bell, 44 M.J. 403, 407 (1996) (rejecting argument that hearsay testimony originally given at a prior trial can only be impeached in a subsequent trial by evidence that is available and admissible at the time of the former testimony).
That said, I do not agree with Justice Sullivan, however, that this conviction was of the type made admissible under Rule 609(a)(2). Extortion is no more a crimen falsi than robbery. See Notes of Conference Committee, 1990 Amendment, Federal Rule of Evidence 609 (following extensive debate in Congress, crimen falsi is not intended to include crimes such as bank robbery). It is my view that it was instead incumbent upon the trial court to then have conducted the weighing analysis that is appropriate for all impeachment evidence of criminal convictions. Because the trial court did not weigh the evidence and because it precluded it for an erroneous reason, its ruling was error. If we are to weigh the evidence, as the majority appears to do, I find that the balance should be struck in favor of its admission.
First, the weighing process under 609(a) considers the probative value of the proffered testimony against any resulting prejudicial effect on a party. See M.R.E. 609(a) (“... the court determines that the probative value of admitting this evidence outweighs its prejudicial effect on a party”); see also Comment, M.R.E. 609(a) (“The Federal standard defines ‘prejudicial effect’ as being that which may injure the defendant in a criminal case. Mississippi Rule 609(a)(1) recognizes that impeachment occurs in civil as well as criminal cases and accordingly defines “prejudicial effect” in broader terms, i.e., as affecting ‘a party”’); Tillman v. State, 606 So.2d 1103, 1108 (Miss.1992) (Banks, J., concurring in part, dissenting in part).
Needless to say the sheriff, who was the witness in this case to be impeached, was not a party. Thus, the Section 609(a) weighing process could only result in the admissibility of the impeachment, since its admission would work no prejudicial effect at all on either party.
The remaining weighing process as regards the admissibility of this testimony is that provided in Rule 403. There the burden of showing prejudice is upon the objector. The circumstances in this weighing are identical, however, to those in the 609(a) weighing, and a fortiori should have resulted in the admission of the impeachment evidence. *1123 The fact is that the sheriff was testifying to a statement given and the circumstances surrounding the giving of the statement. His testimony provided the only evidence of Wil-cher’s intent to rob his victims, and was contradicted by other statements that did not reveal any intent to commit robbery. He came to the stand clothed with the authority of the state and an aura of credibility. In light of those circumstances, the impeachment evidence of this sort takes on even more weight.
The question remains whether the error should compel reversal. The witness gave testimony concerning Wilcher’s statements about the crime. The fact is, however, that this witness’s testimony is the only admission that Wileher’s motive in committing the murders was robbery. None of Wilcher’s many other statements supported the conclusions that the murder occurred while he was engaged in the crime of robbery. They all indicated that he was engaged in a drunken lark which turned terribly tragic. The distinction would be of no concern were it not for the fact that an aggravating circumstance charged and found by the jury was that the murder was committed during a robbery. The jury declined to find that Wileher had committed a kidnaping. Thus, the credibility of the only witness reporting the statement that robbery was Wilcher’s plan is a crucial issue, and he was entitled to present his sentencing jury with all of the evidence that was available that was relevant to that fact, including the impeachment of Sheriff Warren’s testimony. Indeed, any defendant is free to raise at sentencing any residual doubt of facts that have been litigated in a guilt phase. Hansen v. State, 592 So.2d at 151. Reluctantly, I therefore must conclude that the trial court’s refusal of Wilcher’s attempt to do so compels reversal.
For the foregoing reasons, I therefore dissent from the result reached by the majority on this issue.
SULLIVAN, P.J., joins this opinion.