851 So.2d 366 (2002)
Mary Ann ADAMS and John W. Barrett, Appellants,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00353-COA.
Court of Appeals of Mississippi.
December 3, 2002.
Rehearing Denied March 4, 2003.
Certiorari Denied July 17, 2003.
*370 James A. Williams, Charles W. Wright, Jr., Meridian, attorneys for appellants.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before KING, P.J., IRVING and BRANTLEY, JJ.
KING, P.J., for the court.
¶ 1. Mary Ann Adams and her brother, John Barrett, were tried together and convicted of murder by a Lauderdale County Circuit Court jury. They were each sentenced to life in prison. Following the denial of their post trial motions each has perfected an appeal in which they have asserted various allegations of error. Finding no reversible error, this Court affirms their convictions and sentences.

FACTS
¶ 2. The body of Mary Ann Woolf, was found lying face down in a creek bed in Lauderdale County. Her automobile was perched on an embankment about fifteen feet above the location of her body. Law enforcement authorities immediately suspected that the scene had been staged to look like an accident. Woolf's automobile was dusted and processed for fingerprints and an autopsy was performed on her body. The state medical examiner who performed the autopsy testified that the cause of Woolf's death was fresh water drowning. He testified that, in his professional opinion, the manner of death indicated a homicide. He testified that certain marks and bruising on the body were evidence that Woolf had been forcibly held under water when she drowned. Also, there was expert testimony that there was very little damage to Woolf's car and the minor impact of the car going down the embankment was not enough to have caused Woolf to be ejected from the automobile.
¶ 3. Adams was the last person known to have seen the victim alive and came under early suspicion. Fingerprints found on the victim's car were later matched to Adams's brother and co-defendant, John Barrett. Other facts pertinent to the resolution of the issues will be presented in the discussion of those issues.

DISCUSSION OF THE ISSUES
¶ 4. Adams makes the following allegations of error:
I. The trial court erred in overruling her motions for directed verdict, JNOV, judgment of acquittal and alternative motion for new trial.
II. The trial court abused its discretion by overruling her on the following:
(a) Motion in limine concerning evidence of the Sherron Walters incident;
(b) Admission of her statement into evidence;
(c) motion for severance;

*371 (d) Request to admit Sherron Walters' polygraph results into evidence; and
(e) Her cross-examination of witnesses Todd, Robinson, Franklin, Peter and Paul Clark.

I. Motions for directed verdict, JNOV, judgment of acquittal and alternative motion for new trial.
¶ 5. Adams alleges that the State's case against her is insufficient in fact and law to support a murder conviction, therefore it was reversible error for the trial court to deny her motion for a directed verdict, and judgment notwithstanding the verdict.
¶ 6. The standard of review for denial of a judgment notwithstanding the verdict and a directed verdict are identical. Sperry-New Holland v. Prestage, 617 So.2d 248, 252 (Miss.1993). Under that standard, this Court considers all of the evidence in the light most favorable to the State and gives the State the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a guilty verdict, this Court is required to reverse and render. On the other hand, if there is substantial evidence in support of the verdict of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, this Court is required to affirm. American Fire Protection, Inc. v. Lewis, 653 So.2d 1387, 1391 (Miss.1995).
¶ 7. Even though Adams makes the allegation that it was error for the trial court to deny her motions for directed verdict and JNOV, she offers no legal support or reasoned argument for her allegation. As this Court has stated on previous occasions, failure to support an allegation of error with any reasoning or application of the law to the facts bars this Court from considering this issue on the merits. Thornton v. State, 724 So.2d 1003, 1006 (¶ 17) (Miss.Ct.App.1998).
¶ 8. Procedural bar notwithstanding, when we consider all of the evidence in the light most favorable to the verdict and give the State the benefit of all reasonable inferences that can be drawn from the evidence we do not find that the evidence points so overwhelmingly in favor of Adams that reasonable jurors could not have arrived at a guilty verdict.
¶ 9. Adams alleges further that the verdict was against the overwhelming weight of the evidence, and therefore the trial court erred in denying her motion for a new trial. Adams's sole argument in support of this contention consists of the following list of things that she says the State failed to prove:
1. No eyewitness placing Mary Ann Adams at the scene.
2. No eyewitness identified Mary Ann Adams with Mary Ann Woolf that night.
3. No physical evidence at the scene found at Mary Ann Adams's house or car.
4. No search of her house or car for mud, soil, drugs, muddy clothes, etc., no match for hair or fiber to victim's car or scene.
5. No fingerprints of Mary Ann Adams on car.
6. No testimony of conspiracy.
7. No evidence of motive.
8. No evidence of hate or ill will.
¶ 10. Conspicuously absent from Adams's brief, however, is any reference to facts or evidence tending to provide proof of her innocence. The Mississippi Supreme Court wrote in Clark v. State, 503 *372 So.2d 277, 280 (Miss.1987), that there is a presumption that the judgment of the trial court is correct, and the burden is on the appellant to demonstrate some reversible error. Additionally, the appellant has the duty to make more than mere assertions and should set forth reasons for her arguments and cite authorities in their support. Id.
¶ 11. In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict. A new trial is the proper remedy in those instances where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Baker v. State, 802 So.2d 77, 81 (¶ 14) (Miss.2001). When this Court accepts as true the evidence which supports the verdict in the case at bar we are in no wise left with the conviction that to allow it to stand would sanction an unconscionable injustice.

II(a). Adams's motion in limine concerning evidence of the Sherron Walters incident
¶ 12. Appellant Mary Ann Adams had befriended the murder victim, Mary Ann Woolf, over a period of time. Both women were nurses and worked together at the University of Mississippi Medical Center at Jackson. They became very close, car-pooled to work, and spent a good deal of time together both on and off the job. When Woolf began having difficulty with her teenaged daughter, Andrea, Adams generously offered to have Andrea come and live with her while the mother and daughter tried to work things out. It was during this time that Woolf, at the suggestion of Adams, contacted an insurance agent and purchased a life insurance policy. In what the insurance agent testified was a very unusual and rare occurrence, Woolf had Adams named as the beneficiary of the policy rather than her two adult sons or her daughter, Andrea. The face amount of the policy was $200,000 and contained a double indemnity rider that paid double that amount in the event of an accidental death. Six months after the policy went into effect Woolf's body was discovered in a creek bed. The last person known to have seen her alive was Adams.
¶ 13. A few years earlier, Adams had befriended another woman, Sherron Walters, in pretty much the same fashion. Walters was single with two children and was down on her luck and having quite a hard time of it when Adams invited Walters to live in her home. Walters accepted the invitation and lived with Adams for about two and a half months. In a matter unrelated to the case at bar, Walters later testified in federal court that Adams arranged for an insurance agent to come and see her about obtaining what Walters thought was health insurance. Walters admitted talking to the agent and signing an application but testified that she never paid any premiums and always believed that she was applying for health insurance.
¶ 14. At some later point in time Adams and Walters took a trip together by automobile. They started out on the trip in separate vehicles but ended up together in the same car. Walters testified that initially she was driving the car the two ended up in together, and that Adams asked her to stop at a liquor store where Adams purchased alcohol and at a grocery store where Adams purchased fruit juice. Walters testified that while she drove the car Adams made drinks, and when Adams finished with the drinks and at Adams's urging, they switched drivers and she drank while Adams drove. Walters testified that Adams eventually drove up to a gate and began honking the car horn. *373 That was the last thing she remembered before she woke up in the hospital.
¶ 15. In the hospital Walters learned that the automobile she was in had been struck by a train as it sat on the railroad tracks with its lights and ignition turned off and its doors locked. Walters also learned that she had been alone in the car. When she attempted to file a claim under the insurance policy she had applied for she learned that she had been sold life insurance, not health insurance, and that Adams was the sole beneficiary. The face amount of the policy was $250,000 with an additional $100,000 indemnity in case of accidental death.
¶ 16. In a pretrial motion in limine Adams sought to prohibit the State from making any direct or indirect reference to any of her dealings with Walters on the ground that such would constitute inadmissible evidence of other crimes or bad acts in violation of M.R.E. 404(b). The trial court found that Adams's dealings with Walters did constitute evidence of prior bad acts but ruled that the evidence was admissible "in order to show motive, intent, preparation, plan, knowledge and absence of mistake or accident." The court ruled that the probative value of the evidence outweighed any possible unfair prejudice to Adams, and held that a limiting instruction would be given to the jury regarding the limited purpose for which the evidence was allowed. A limiting instruction was in fact given to the jury in this regard.
¶ 17. In this appeal Adams contends that the trial court erred in admitting the evidence without conducting a Rule 403 balancing test. Contrary to this contention, the lower court, while not specifically stating that it was conducting a Rule 403 balancing test, did in fact make a finding that the probative value of the evidence outweighed any possible unfair prejudice to Adams and subsequently gave a limiting instruction to the jury. This Court held in Givens v. State, 730 So.2d 81 (¶ 28) (Miss. Ct.App.1998), that when the trial judge, in his sound discretion, determines that evidence of other bad acts is deemed relevant and is admissible, it must also determine whether the probative value of the evidence is substantially outweighed by the considerations of Rule 403 and that determination will not be reversed unless the reviewing court finds clear abuse of discretion. The trial court did not abuse its discretion on this issue.

II(b). Admission of Adams's statement
¶ 18. Adams argues that because the State was permitted on numerous occasions to make reference to the written statement that she gave to law enforcement authorities she should have been allowed under Rule 106 of the Mississippi Rules of Evidence to admit the statement itself into evidence. Rule 106 states:
When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously.
Adams contends that the purpose of the rule is to prevent misleading the jury by taking evidence out of context.
¶ 19. Adams fails to take into consideration the fact that the State never attempted to have, nor did it have, any part of her statement admitted into evidence. The State sought to prove what was not contained in the statement only. This fact is clearly demonstrated by the following excerpt from the trial transcript:
BY THE COURT: All right. I'm reading in its entirety Rule 106 plus the comment.
* * *

*374 [A]t the present time ... the State has not introduced or offered to introduce in evidence this statement of Ms. Adams. It is marked for ID only. The issue is by asking the witness [Mr. Knight] did Ms. Adams in that statement make any mention of John Barrett and allowing the witness to testify that no mention was made by Ms. Adams of John Barrett, then that isat least in the position of he defenseallowing the State to introduce a written recorded statement or part thereof.
* * *
Under Mississippi case law, the rule of completeness ... attempts to prevent misleading the jury by taking evidence out of context.... Now, in that last comment, how can the Jury be misled into taking this witness' statement, that is Mr. Knight, that the defendant did not mention John Wayne Barrett in her written statement, how can that be taken out of context in the entire statement?... [F]rom what I understand, there is nothing in that statement at all about John Barrett, period.
¶ 20. Adams argues that the State opened the door to the statement and the trial court's refusal to admit it into evidence prevented her from presenting her theory of defense which was that she "cooperated, told the truth, and investigators failed to objectively investigate the death of Woolf." The trial court, in refusing to allow the statement into evidence stated:
BY THE COURT: I conclude from the argument that the possibility exists, maybe a strong possibility, that neither of your clients will choose to testify, and they will assert their 5th Amendment rights to remain silent. And by having this statement introduced in evidence and given to the [j]ury that Ms. Adams will thereby effectively be able to present her side of the story to the [j]ury without having to take the witness stand and be subject to cross-examination. That is my concern here.
Under 801(d)(2), an admission by a party opponent, the rule says, "A statement is not hearsay if the statement is offered against a party and is ahis own statement, in either his individual or represented capacity...."
When the State offers this statement given by Ms. Adams, then it is not hearsay because he State is offering it against Ms. Adams.
* * *
It is admissible in my judgment if the State offers it in evidence and lays the proper foundation, Miranda and otherwise, to have it admitted.
When the defendant on the other hand wants to introduce a self-serving out-of-court statement for the truth of the matter asserted of their own client, it is rank hearsay.
¶ 21. Mississippi appellate courts review a trial court's rulings on the admissibility of evidence under the abuse of discretion standard. Clemons v. State, 732 So.2d 883 (¶ 18) (Miss.1999). The trial court must exercise that discretion within the confines of the Mississippi Rules of Evidence and reversal will only be appropriate when an abuse of discretion resulting in prejudice to the accused occurs. Id. We find that the trial judge did not abuse his discretion in the decision of this issue.

II(c). Motion for severance
¶ 22. In denying Adams's motion for severance the trial court held that Rule 7.08 of the Uniform Rules of Circuit and County Court Practice allowed Adams and Barrett to be tried together because they had both been charged in one indictment for the same crime, and, since the charge did not involve the death penalty, the *375 granting or refusal of severance was left to the discretion of the trial court in accordance with URCCC 9.03.
¶ 23. Adams contends that the trial court abused its discretion in not allowing a severance. She cites to "Rule 4.04 of the Uniform Criminal Rules of Circuit Court Practice" for the proposition that the granting or refusal of severance in cases not involving the death penalty shall be discretionary with the trial judge, and to several Mississippi Supreme Court opinions for the proposition that refusal to grant severance is reversible error if it prejudices the defendant at trial. However, she fails to apply the rule or the case law to the facts of her situation in any meaningful way to show an abuse of discretion or any prejudice flowing from the ruling. As stated earlier, the failure to support an allegation of error with any reasoning or application of the law to the facts, bars this Court from considering this issue on the merits. Thornton, 724 So.2d at (¶ 17). Nevertheless, procedural bar notwithstanding, when we examine the trial court's ruling on this matter we still find that the issue is without merit.
¶ 24. The trial court denied the motion for severance on the ground that neither defendant intended to exculpate him or herself at the expense of the other, that there was no conflict of interests between the co-defendants and there was no indication that the balance of the evidence would go more to the guilt of one defendant than to the other. This Court reviews a lower court's refusal to grant a motion for severance under the abuse of discretion standard. In accordance with that standard we find that the trial court's ruling on this issue is in complete harmony with this Court's own ruling on this issue in Gilbert v. State, 795 So.2d 606, (¶ 15) (Miss.Ct.App.2001), wherein we held:
Lewis' testimony, the only testimony offered by either defendant, did not tend to exculpate himself at the expense of his co-defendant. There was not a conflict of interests among the codefendants. Nor did the balance of the evidence go more to the guilt of one defendant than to the other. It is evident that the lower court did not abuse its discretion by declining to grant severance.
¶ 25. Barrett's testimony was the only testimony offered by either defendant in the case at bar. His testimony did not attempt to exculpate himself at the expense of Adams, there was no conflict of interest between Barrett and Adams, and the balance of the evidence did not go more to the guilt of one than the other, all of which gives clear indication that there was no abuse of discretion in the trial court's refusal to grant severance.

II(d). Polygraph results
¶ 26. Adams contends that she should have been allowed to cross-examine Sherron Walters about her failure to pass a polygraph test regarding the train collision incident. While conceding that polygraph results are not admissible in this state as evidence, Adams argues that the admission of the train collision incident under M.R.E. 404(b) made the polygraph results relevant under M.R.E. 401 and admissible. Adams contends that the polygraph results were the only method available to her to defend against Walters's allegations.
¶ 27. Once again Adams fails to support her allegations with any reasoned argument or authoritative support, so once again her assignment of error is subject to the procedural bar. Procedural bar notwithstanding, however, we again find that the issue lacks merit because, as this Court held in McClendon v. State, 748 So.2d 814 (¶ 23) (Miss.Ct.App.1999), "neither *376 the fact of the taking of a polygraph examination nor the results of such an examination are admissible into evidence."

II(e). Cross-examination restrictions
¶ 28. Adams claims to have been denied the right to present her defense theory to the jury by rulings that unfairly limited her cross-examination of certain witnesses. This Court reviews a trial court's rulings on the extent of cross-examination for abuse of discretion and its rulings will be reversed only when an abuse of that discretion is shown. Fields v. State, 758 So.2d 440(¶ 7) (Miss.Ct.App. 1999).
¶ 29. According to Adams, she was targeted by law enforcement officials from the moment Woolf's body was found, and, consequently, they failed to objectively investigate Woolf's death. She accuses law enforcement personnel of testifying "loosely and falsely to an aggregated evidence" against her. This Court's examination of the record suggests that Adams's essential complaint is the trial court refused to allow her to cross-examine law enforcement witnesses on the contents of her statement. The trial court ruled that to do so would have given her the unfair advantage of being allowed to testify without the State having the opportunity to cross-examine her. This Court agrees and finds no abuse of discretion.
¶ 30. Adams makes numerous other claims of having been hampered in her defense by not being allowed to fully crossexamine other witnesses. This Court has examined the record in regard to those witnesses and finds Adams's claims to be baseless and the trial court's rulings to be well within the bounds of its discretion. Accordingly, we find that this issue has no merit.
¶ 31. Barrett makes the following allegations of error:
I. The trial court erred in refusing to grant a severance
II. Barrett received ineffective assistance of counsel
III. Improper instructions were provided to the jury
IV. The indictment was defective.

I. Severance
¶ 32. Barrett contends that the vast majority of the evidence pointed to Adams and that he was highly prejudiced by the joint trial. In support of his claim that the trial court abused its discretion in denying a severance, Barrett cites to Tillman v. State, 606 So.2d 1103 (Miss.1992) and Hawkins v. State, 538 So.2d 1204 (Miss. 1989). Ironically, Tillman and Hawkins provide conclusive authority for sustaining the trial court's refusal to grant severance.
¶ 33. In Tillman, the Mississippi Supreme Court, citing Hawkins, held that the trial court has the discretion to grant a severance if it is necessary to promote a fair determination of the defendant's guilt or innocence; and the criteria used to determine whether a denial of a motion for severance is proper are whether or not the testimony of one co-defendant tends to exculpate that defendant at the expense of the other defendant, and whether the balance of the evidence introduced at trial tends to go more to the guilt of one defendant rather than the other. When these criteria are not met, as this Court found in Adams's issue II(c), and absent a showing of prejudice, there are no grounds to hold that the trial court abused its discretion. The supreme court held that there is no prejudice when, as in the case at bar, one co-defendant does not testify and the other defendant is able to put on a defense in spite of the lack of severance and gives testimony that exculpates himself. Tillman, 606 So.2d at 1106.
*377 ¶ 34. There was no abuse of discretion or prejudice in the trial court's refusal to grant severance.

II. Ineffective assistance of counsel.
¶ 35. Even though Barrett's appellate brief points to several specific instances of alleged deficiency on the part of his trial counsel, the gravemen of his claim is that the "adversarial testing process did not function." The United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), described "the undermining of the proper functioning of the adversarial process" as the benchmark for judging any claim of ineffectiveness of counsel. The court held that succeeding on such a claim requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable, and that unless a defendant makes a showing that (1) counsel's overall performance was deficient and (2) the deficient performance prejudiced the defense, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. Id.
¶ 36. In determining whether counsel's performance was adequate, this Court looks to the totality of the circumstances. Taylor v. State, 682 So.2d 359, 363 (Miss.1996). Keeping in mind that there is a strong yet rebuttable, presumption that the actions of defense counsel were reasonable and strategic, Cole v. State, 666 So.2d 767, 775 (Miss.1995), because defense counsel is presumed competent. Foster v. State, 687 So.2d 1124, 1130 (Miss.1996).
¶ 37. After examining the totality of the circumstances surrounding Barrett's trial we cannot say that his trial counsel's performance was inadequate or prejudicial. The State's only physical evidence against Barrett just also happened to be one of the most powerful pieces of evidence that the State could produce against himhis fingerprintsin numerous locations on the victim's automobile at a time when the car had recently been washed and in the face of a statement Barrett made to law enforcement officials denying any knowledge of the victim. Short of a finding that defense counsel had in his possession irrefutable proof that the fingerprints on the victim's car were not in fact Barrett's, or an indisputable explanation of how Barrett's prints came to be on the victim's car, yet failed to present such evidence, this Court is hard pressed to find that Barrett's conviction resulted from a breakdown in the adversarial process that renders the result unreliable. This issue has no merit.

III. and V. Jury instructions
¶ 38. We have combined our discussion of Barrett's issues III and V because they both involve challenges to given jury instructions.
¶ 39. We turn our attention first to the challenged instruction in issue III, Instruction C-19, which was granted at the request of Barrett's co-defendant, Adams. C-19 instructed the jury that evidence which made it "probable" that Adams was guilty was insufficient to find guilt beyond a reasonable doubt. The trial judge granted the instruction and appended a handwritten addition that read: "These same principles apply to the defendant John Barrett." Barrett concedes that the instruction was proper, but claims that it was imposed on him without his authority and this Court should review the lower court's granting of the instruction under the doctrine of plain error.
¶ 40. We turn now to the instruction in Barrett's issue V, Instruction C-9, which reads as follows:

*378 The Court instructs the Jury that should you find from the evidence in this case, beyond a reasonable doubt that:
1. On or about the 7th day of June, 1998, in Lauderdale County, Mississippi;
2. The Defendant, John Barrett, acting alone or jointly with the co-defendant Mary Ann Adams or other unidentified persons, did wilfully, unlawfully and feloniously and of malice aforethought or with deliberate design to effect the death of Mary Ann Woolf;
3. Did kill Mary Ann Woolf, a human being, by drowning her;
4. Without authority of law and not as an accident;
then it is you sworn duty to find the Defendant, John Barrett, guilty of Murder.
Should the State fail to prove any one or more of these elements beyond a reasonable doubt, then you shall find the Defendant, John Barrett, not guilty.
Barrett contends that the use of the phrase "other unidentified persons," caused an expansion of the indictment that prejudiced him before the jury by creating a difference between what the indictment charged and what the jury instruction charged.
¶ 41. Barrett did not lodge a contemporaneous objection to either instruction, nor did he raise any objection to the granting of either instruction in his post trial motions, consequently, he asks this Court to find plain error in our review of the instructions. We decline to do so.
¶ 42. This Court has read all of the instructions together as a whole, without having read any one alone and without having taken any one out of context, and finds no error in the granting of the instructions. Woodham v. State, 779 So.2d 158, 163 (¶ 24) (Miss.2001). What we do find is that Barrett was given a fair and adequate opportunity to present his theory of the case through the instructions that were given, and we hold that these assignments of error are procedurally barred and are also without merit.

IV. The indictment
¶ 43. Barrett contends that the indictment against him was defective because only the adjective "her" was used to modify "malice aforethought," rather than "his and her." The indictment reads in pertinent part as follows:
The Grand jury for the State of Mississippi, taken from the body of good and lawful men and women of Lauderdale County in the State of Mississippi, elected, impaneled, sworn and charged to inquire in and for said county, in the State aforesaid, in the name and by the authority of the State of Mississippi upon their oaths present that
MARY ANN ADAMS
JOHN WILLIAM BARRETT
in Lauderdale County, Mississippi, on or about the 7th day of June, A.D., 1998, did wilfully, unlawfully, and feloniously and of her malice aforethought or with deliberate design to effect the death of MARY ANN WOOLF, did kill and murder MARY ANN WOOLF, a human being, without authority of law and not in necessary self defense, by drowning her and, if not this greater crime, then the lesser crime of Manslaughter for having killed MARY ANN WOOLF by drowning her without any design to effect her death....
¶ 44. Having failed to raise this issue in the lower court, Barrett alleges in this appeal that the indictment is fatally flawed and entitles him to raise this issue for the first time on appeal. He is wrong on both counts. The defect he complains of is one of form, not of substance. Defects of substance must be corrected by *379 the grand jury but courts may amend an indictment to correct a defect in form. Winters v. State, 814 So.2d 184 (¶ 14) (Miss.Ct.App.2002). A change to an indictment is one of form if it does not materially alter facts which are the essence of the offense as it originally stood, or materially alter a defense to the indictment as it originally stood, to the prejudice of the defense. Id.
¶ 45. We find that, had the matter been brought to the attention of the trial court, an amendment to the indictment to include the words "and his" would have been permitted as one of form. Barrett's failure to demur to the indictment waived the issue on appeal. Brandau v. State, 662 So.2d 1051, 1055 (Miss.1995). Procedural bar notwithstanding, we find that Barrett failed to prove any prejudice to his defense as a result of the indictment as it originally stood; therefore, we hold that the issue fails on its merit as well.
¶ 46. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED AS TO EACH OF THE APPELLANTS. THE COSTS OF THIS APPEAL ARE ASSESSED ONE HALF TO EACH APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.